IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JERRY ADKINS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 3:09CV510-PPS/CAN |
| | ) | |
| KENNETH R. WILL, VIM RECYCLING, INC. | ) | |
| and K.C. INDUSTRIES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

One-hundred-fifty plaintiffs have brought this action against defendants Kenneth R. Will and two companies of which he is a principal, VIM Recycling, Inc. and K.C. Industries, LLC, challenging their operation of a waste dump and recycling facility in the community where the plaintiffs live and work. Here's a basic summary of plaintiffs' contentions in their own words:

> For the last nine (9) years Defendants have and continue to store thousands of tons of wood wastes, engineered wood wastes, construction and demolition wastes, and other waste materials outdoors on property located at 29861 U.S. 33, in Elkhart, Indiana ("VIM facility" or "VIM site").  The massive waste piles are open dumped on bare earth, without the use of any barrier, lining, or containment system allowing contaminants to leach into the ground, attracting harmful vectors, such as mosquitoes, termites and rodents, and posting a fire and safety hazard to the surrounding neighborhood where Plaintiffs reside and work.  When the waste piles are unearthed and shifted, harmful emissions from decomposing, smoldering wood wastes and other waste materials are released into the atmosphere. Defendants also grind and process these waste materials outdoors without a baghouse or effective pollution control.

Complaint [DE 1], ¶2.  The plaintiffs allege that the defendants have violated provisions of federal law known as the Resource Conservation and Recovery Act ("RCRA") and are also liable to the plaintiffs on state law theories of nuisance, trespass and negligence.

Defendants have filed a motion seeking to have the action dismissed on the ground that there is no federal subject matter jurisdiction under RCRA because the Indiana Department of Environmental Management ("IDEM") and the United States Environmental Protection Agency are already pursuing the matters raised by the plaintiffs' complaint here.  According to defendants, "RCRA citizen suits are barred where either the EPA Administrator or the relevant state has commenced and is diligently pursuing action against the alleged violator." [DE 13, p.4, citing 42 U.S.C. §6972(b)(1)(B) and (b)(2)(B)(i)].  Defendants then filed an amended motion reiterating the request for dismissal but asking in the alternative that this court abstain from the exercise of jurisdiction in the case based on two different common law abstention doctrines.

Federal jurisdiction here is predicated on the two claims under RCRA set forth in Counts I and II of plaintiffs' complaint.  Both are species of "citizen suit" authorized by 42 U.S.C. §6972.  Count I is brought pursuant to §6972(a)(1)(A), which authorizes suit against a person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter."  Count I alleges a list of 17 ways in which defendants have violated standards, regulations and requirements applicable and actionable under RCRA.  Count II is brought pursuant to §6972(a)(1)(B), alleging that defendants' "solid waste handling, transportation, processing and disposal have contaminated soil, sediment, ground waters and air and created conditions at the VIM site that present or may present an imminent and substantial endangerment to health and the environment." [DE 1, ¶174]. In support, plaintiffs make allegations about defendants' handling of three different classes of solid waste and their use of "berms made of solid waste materials." [DE 1, ¶175].

**Statutory Limits on RCRA Citizen Suits**

Subsection (b) of §6972 prescribes statutory limitations on citizen suits. As to claims under §6972(a)(1)(A), the statute provides that no action may be commenced "if the Administrator [of the EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order." *See* §6972(b)(1)(B). Similarly, as to claims under §6972(a)(1)(B), subsections (b)(2)(B) and (b)(2)(C) provide that no action may be commenced if the EPA Administrator or the State has taken certain actions including commencing and diligently prosecuting an action under RCRA, or engaging under CERCLA[1] in a removal action, or having incurred costs to initiate a Remedial Investigation and Feasibility Study. Defendants maintain that these limitations are applicable here and deprive this court of federal jurisdiction over this action.[2]

To determine whether or not the statutory limitations apply, I must carefully (more carefully than the parties have done) do three things. I have to examine the statutory text setting out the potentially applicable limitation (which is different for Count I and Count II). I have to parse the allegations of each of the counts brought here under RCRA. Finally, I have to carefully review the particular agency enforcement action or actions claimed to preclude each of the two counts. As this suggests, these steps require a fairly systematic approach.

---

[1] "CERCLA" is the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C.A. §9601 *et seq*.

[2] In their briefing, defendants repeatedly paraphrase the preclusion provisions rather than quote them, and thereby blur the specifics. This also results in defendants' failure to acknowledge and carefully treat the differences in preclusion applicable to violation claims and imminent endangerment claims.

Count I is what I will call a "violation" claim under §6972(a)(1)(A), to distinguish it from an "imminent endangerment" claim brought under §6972(a)(1)(B). The only species of prior agency enforcement action that can bar this violation suit is <u>a lawsuit</u> by the EPA or IDEM. That's because §6972(b)(1)(B) speaks only of a "civil or criminal action in a court of the United States or a State." No enforcement measures undertaken by either the federal or state administrative agency short of litigation will bar Count I under RCRA. For purposes of this analysis, then, defendants only cloud the waters with long recitations of the many steps short of litigation that IDEM and EPA have taken in response to conditions at the VIM site. *See PMC, Inc. v. Sherwin-Williams Company*, 151 F.3d 610, 618-19 (7th Cir. 1998).

IDEM has brought two actions in Indiana state courts challenging the waste management at the VIM site. The first, filed October 3, 2008 in Elkhart Circuit Court, is a petition for civil enforcement of the Agreed Order entered into by IDEM and VIM Recycling, Inc. effective January 16, 2007. The second IDEM action was filed on or about December 21, 2009 in Elkhart Superior Court, seeking preliminary and permanent injunctions enjoining VIM Recycling, Inc. to immediately cease the dumping of contaminants and solid waste at the site and to remove and properly dispose of all B Grade solid wastes from the site.

Plaintiffs argue that an agency action filed <u>after</u> commencement of this suit doesn't count for purposes of the RCRA statutory preclusion, so that the more recent IDEM state action cannot factor into my analysis. Plaintiffs base their argument on the notice requirements applicable to citizen suits under RCRA, reasoning that the state's failure to act within the 60 days during which IDEM was on notice of plaintiffs' intent to file this suit renders IDEM's later suit irrelevant to the statutory bar. Plaintiffs cite no case in support. Defendants respond with

*River Village West, LLC v. The Peoples Gas Light and Coke Co.*, 618 F.Supp.2d 847 (N.D.Ill. 2008), in which a district court held that a RCRA citizen suit filed prior to a CERCLA Administrative Consent Order was nonetheless subject to the bar on citizen suits under CERCLA challenging a cleanup effort already undertaken by the government.

Although not directly on point because it applies a CERCLA bar rather than the RCRA bar at issue here, I find the reasoning persuasive, even to the RCRA context. The citizen suit provisions of RCRA, like those in other environmental statutes, are intended as a vehicle for action when local and federal agencies fail to exercise their enforcement responsibilities. Multiple lawsuits redundant of government enforcement are to be avoided, whether filed before or after the government action, which is the presumptive primary enforcement mechanism. *Id.* at 853-54. I conclude that in determining the applicability of the statutory bar, I may and should take into account IDEM's more recent enforcement efforts, in the form of the December 2009 litigation.[3]

The statutory bar of §6972(b)(1)(B) applies to a citizens suit alleging a violation of a permit, standard, regulation, condition, requirement, prohibition, or order only where the civil action brought by the agency seeks "to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order." This parallelism in the language of subsections (a)(1)(A) and (b)(1)(B) supports the conclusion that the bar requires, and is limited by, an overlapping scope and subject matter of this lawsuit with the suits IDEM has filed. In

---

[3] Even if the more recent of IDEM's state court action can't be the basis for statutory preclusion of the RCRA claims, it can and does factor into the *Colorado River* and *Burford* abstention analysis undertaken below.

Count I, by listing 17 different alleged violations of federal and state statutes and regulations, plaintiffs have succeeded in pleading a claim that defies easy categorization.  Furthermore, no doubt aware of the statutory preclusion principle, plaintiffs have endeavored to plead their way around its bar.  In the prayer for relief as to Count I, plaintiffs request injunctive relief addressing defendants' violations "not addressed or resolved by EPA's [Administrative Consent Order] and IDEM's enforcement action." [DE 1, ¶213].

I have reviewed IDEM's Verified Petition for Civil Enforcement, filed against VIM Recycling, Inc. in the Superior Court of Elkart County, Indiana. [DE 20-3].  The petition seeks enforcement of the Agreed Order between IDEM and VIM that became effective on January 16, 2007.  The terms of the Agreed Order, among other things, require VIM to cease placing any additional material on existing 'C Grade' waste piles, to cease using any regulated solid waste to construct the on-site berm without written permission from IDEM, and to remove and properly dispose of all 'C Grade' solid waste by September 30, 2008.  There are references in Count I of the complaint before me to the handling and treatment of 'C Grade' waste at the VIM site, and the two complaints therefore overlap in that respect.  Of the 17 types of violations alleged in ¶168(a)-(q), these include (a), (b), and (e).

Count I here also alleges defendants' violation of a number of Indiana statutes and regulations that are referenced in the Agreed Order.  In this way, by requiring VIM to "comply with 329 IAC § 10-4-2, 329 IAC § 10-4-3, IC §13-30-2-1(3), IC §13-30-2-1(4), and IC § 13-30-2-1(5)" [DE 20-2, p.4], the Agreed Order (and its enforcement in the IDEM action) overlap with seven of the alleged violations in Count I of the complaint here, namely ¶168(a), (b), (d), (f), (o), (p) and (q). The remainder of the 17 species of violations alleged in Count I – namely ¶168(g)

through (n) – all raise issues of compliance with state permit and pre-operations requirements, which are within the ambit of the Agreed Order's requirement that defendants immediately cease processing 'C Grade' waste except in compliance with all applicable laws, rules, orders and/or permits. [DE 20-2, p.3.]  Even without consideration of the second IDEM suit, the required degree of commonality for application of the statutory bar is found on the basis of the first IDEM suit alone, given the breadth of the Agreed Order sought there to be enforced.  The second-filed IDEM lawsuit specifically challenges VIM's practices of open dumping and otherwise unlawful storage and disposal of 'B Grade' wastes and the resulting pollution hazards.  These allegations provide further overlap with at least ¶168(a), (b), ( c), (d), (e), (f), (p) and (q) of Count I in this case.  On these determinations, I conclude that Count I here, plaintiffs' violation claim under RCRA, is subject to dismissal as precluded pursuant to §6972(b)(1)(B).

    Turning to Count II of the complaint, it alleges generally that defendants' "solid waste handling, transportation, processing, and disposal have contaminated soil, sediment, ground waters and air and created conditions at the VIM site that present or may present an imminent and substantial endangerment to health and the environment." [DE 1, ¶174].  Count II further references defendants' handling of "A", "B" and "C" wastes, and the berms made of solid waste materials, as creating the alleged endangerment. [DE 1, ¶¶175-176].  In contrast to "violation suits" under §6972(a)(1)(A), Count II is an "imminent endangerment claim" brought under §6972(a)(1)(B).  Section 6972(b)(a)(B) and (b)(2)(C) prescribe several types of enforcement actions by federal or state environmental agencies which may preclude a citizen suit bringing an imminent endangerment claim.

Imminent endangerment claims such as Count II here can be precluded pursuant to §6972(b)(2)(B)(i) by the EPA's diligent prosecution of certain types of action under RCRA or CERCLA. This provision does not apply here because the EPA has filed no lawsuit involving the VIM site. Pursuant to §6972(b)(2)(C)(i), a lawsuit by a state environmental authority can preclude a citizen suit's imminent endangerment claim "if the State, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment...has commenced and is diligently prosecuting an action under subsection (a)(1)(B) of §6972." The question I must consider is whether either of IDEM's state actions, or both together, constitute "an action under" §6972(a)(1)(B), which is the imminent endangerment species of RCRA claim.

This question potentially raises subsidiary issues involving the existence of concurrent federal and state court jurisdiction and whether a lawsuit invoking state regulations under Indiana's federally-approved scheme constitutes an action "under" RCRA, much less one under the imminent endangerment claim provision of RCRA.[4] The parties have not carefully parsed the statutory provisions setting out the preclusive effects of governmental enforcement efforts, and so have not identified or addressed these questions. At this stage, I will likewise not undertake that analysis without the parties having raised the issues and offered their input, and because my determinations about common law abstention make such analysis unnecessary.

---

[4] Similar questions were not posed by consideration of preclusion of the violation claim, because the relevant preclusion provision there, **§6972(b)(1)(B)**, is much less specific as to forum and cause of action, referring only to a "civil or criminal action in a court of the United States or a State to require compliance with such permit, standard, regulation, condition, requirement, prohibition, or order."

I will however briefly address the only other potentially applicable preclusive enforcement mechanism relevant to Count II.  This is found in §6972(b)(2)(B)(iv), which applies where the EPA "in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment...has issued an administrative order under section 106 of [CERCLA] or section 6973 of [RCRA] pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action."  The  Administrative Consent Order issued by the EPA on June 29, 2009 does not trigger this provision because it was issued under section 113(a)(1) of the Clean Air Act [42 U.S.C. §7413(a)(1)], rather than under CERCLA or RCRA.  For these reasons, and based on the parties' submissions to date, I am not persuaded to find that Count II – the imminent endangerment claim – is precluded under RCRA's statutory limitations.

**Common Law Abstention Doctrines**

Defendants argue that, even if the statutory bars are not found to apply, I should refrain from exercising jurisdiction in the case under the common law abstention doctrines espoused in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) or *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  Various abstention doctrines allow a court, in limited circumstances, to refrain from exercising jurisdiction.  As a general rule, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).  *See also New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 358 (1989) (*NOPSI*).  But the duty is not "absolute."  *Quackenbush*, 517 U.S. at 716.  The Supreme Court has "held that federal courts may decline to

9

exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest." *Id*. (quotation marks omitted). *See also Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 816-18 (1976). Such interests include "considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Quackenbush*, 517 U.S. at 716 (quotation marks omitted). Often "[f]ederal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism." *Id*. at 723.

Here defendants assert that two types of abstention militate in favor of deferring to the Indiana state process in this case. The first is based on considerations of judicial economy as outlined in *Colorado River*. The second is based upon federalism concerns, and arises out of the Supreme Court's decision *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). While *Burford* and *Colorado River* provide distinct frameworks for abstention decisions, the lines between them often blur. This is why the Supreme Court has acknowledged, "the various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases." *NOPSI*, 491 U.S. at 359 (quotation marks omitted).

### *Colorado River* Abstention

Abstention under the *Colorado River* doctrine is based upon "principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions." *Colorado River*, 424 U.S. at 817. It is instead based upon "considerations of wise judicial administration" and a concern for the "comprehensive disposition of litigation." *Id*. (quotation marks and parentheses omitted). *See also Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004). The

circumstances permitting this type of abstention are very limited, and abstention on this basis is the exception.  *See Colorado River*, 424 U.S. at 817-18; *Clark*, 376 F.3d at 685.

The abstention analysis under the *Colorado River* doctrine is a two-part inquiry.  *See Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2006).  "First, the court must determine whether the concurrent state and federal actions are actually parallel."  *Id*. at 751 (quotation marks omitted).  If they are, "the court must consider a number of non-exclusive factors that might demonstrate the existence of exceptional circumstances."  *Id*. (quotation marks omitted).

Two suits are parallel for *Colorado River* purposes when "substantially the same parties are contemporaneously litigating substantially the same issues."  *Id*. at 752 (quotation marks omitted).  "[I]t is not necessary that there be formal symmetry between the two actions."  *Id*. (quotation marks omitted).  Therefore, "[a]mong other things, to determine whether two suits are parallel, a district court should examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues."  *Id*.  In essence, the question is whether there is a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case."  *Clark*, 376 F.3d at 686 (quotation marks omitted).

*Colorado River* analysis properly takes into account both the earlier-filed and later-filed IDEM actions in Indiana state court. Although the plaintiffs here are not currently parties to either action, that is not necessary.  "Parties with nearly identical interests are considered substantially the same for *Colorado River* purposes."  *Clark*, 376 F.3d at 686. (quotation marks omitted).  Focusing on the parties' litigation interests in this suit and the two state court actions, I conclude that they are substantially the same.  Both the citizen-plaintiffs here and IDEM as plaintiff in the Indiana actions seek the same interest – namely the removal of solid wastes from

the VIM site and the injunction of defendants' further handling of solid waste at the site. [DE 1, ¶¶213-214; DE 20-3, pp.3-4; DE 20-6, p.6].

The two state cases and this action arise out of the same facts.  All three actions are predicated upon defendants' alleged history of operating their wood recycling facility in violation of Indiana's solid waste regulations in a manner involving unlawful open dumping, improper containment and disposal of solid waste, and release of contaminants into the environment.
Unquestionably, these three cases arise out of the same facts.

Finally, the cases raise almost identical legal issues over whether defendants should be enjoined to remove improperly stored waste from the site and cease operations unless they are in compliance with applicable solid waste regulations.  While plaintiffs' complaint here is pled in exhausting detail (consisting largely of recapping the state and federal enforcement efforts at the VIM site) and is cloaked in the two federal RCRA claims in an attempt to establish jurisdiction, the Seventh Circuit has repeatedly "held that two actions are parallel where the underlying issues are the same, even if they have been repackaged under different causes of action."  *Tyrer*, 456 F.3d at 753 (quotation marks, brackets, and ellipses omitted).  *See also Clark*, 376 F.3d at 686-87.  As I see it, the federal claims filed here would have me examine precisely the matters in question in the two state suits.  *See Tyrer*, 456 F.3d at 754.

Having determined that the federal complaint and the two state cases are parallel, I must now evaluate whether there are "exceptional circumstances" that justify abstention.  *See Tyrer*, 456 F.3d at 751.  The case law has provided a non-exhaustive list of ten factors to consider in that determination.  *See id.* at 754.  Those factors are:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Id.* "[N]o single factor is necessarily determinative." *Id.* (quotation marks omitted). The factors are "to be applied in a pragmatic, flexible manner with a view to the realities of the case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983). Nevertheless, the evaluation must be made "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16. When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *Id.* at 28.

My evaluation of the factors leads me to conclude that *Colorado River* abstention applies here. First, there is a very real threat of piecemeal litigation. This factor was "[b]y far the most important" to the Court in *Colorado River*. *See Moses H. Cone*, 460 U.S. at 16. As should be clear from my discussion of the parallel nature of the actions, the three cases present nearly identical issues. While "the danger of piecemeal litigation does not turn on formal identity of issues," *Tyrer*, 456 F.3d at 756, even the formal identity of the issues here is close. Moreover, the threat of piecemeal litigation poses three distinct problems: it duplicates the amount of judicial resources necessary to resolve the dispute, *see Clark*, 376 F.3d at 687; it creates incentives for the parties to game the respective proceedings, *see Tyrer*, 456 F.3d at 756; and it presents the possibility of inconsistent or conflicting results, *see id.* The latter two create questions about "[t]he legitimacy of the court system in the eyes of the public and fairness to the

individual litigants." *Id*. at 756.  All three of these problems exist here, and as a result this factor weighs heavily in favor of abstaining.  Indeed, at a status conference in this case, the plaintiffs candidly admitted that they were unhappy with how the state case was proceeding; it was their belief that the state court judge assigned to the case was not moving it along quickly enough.  Their resort to federal court seems like an effort to end run a state court with whom they are unhappy – the very type of "gaming" to which Seventh Circuit was alluding. *Tyrer*, 456 F.3d at 756.

Furthermore, the state court is also fully capable of providing an adequate remedy.  It has the power to provide the injunctive relief sought by the plaintiffs in both the federal and state actions.  IC §13-30-1-11.  And "[i]f there is merit to [Counts I and II here] . . . there is not only substantial likelihood that the state litigation will dispose of [those] claims presented in the federal case, but virtual certainty." *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 702 (7th Cir. 1992) (quotation marks omitted).

The governing law is another factor weighing in favor of abstaining.  While superficially it may appear that federal law governs the outcome of plaintiffs' RCRA claims, that is not really the situation.  As plaintiffs' acknowledge, the EPA approved Indiana's Solid Waste Management Plan in 1982, finding that "the plan meets the requirements set forth in the RCRA." [DE 29, p.9].  The Plan is codified in Indiana statute at IC §13-21-1 *et seq.*  IDEM has been designated the "solid waste agency for Indiana for all purposes of the federal Resource Conservation and Recovery Act."  IC §13-13-5-1(2).   Evaluation of plaintiffs' claims therefore is done by reference to and application of Indiana law, which has become effective pursuant to RCRA.  The Indiana courts are far better suited to make that evaluation. *See, e.g.*, *Clark*, 376 F.3d at 687-88.

In sum, this action and the two IDEM actions in state court are parallel proceedings. And my evaluation of the relevant factors leads me to the strong belief that extraordinary circumstances exist here. Despite the starting balance being "heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone*, 460 U.S. at 16, I believe abstention under the *Colorado River* doctrine is appropriate.

### *Burford* Abstention

*Burford* abstention grew out of the Supreme Court's 1943 decision, and is grounded in federalism, rather than concerns about the rights of the parties. *See Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 361 (7th Cir. 1998). In *Burford* the Court declined to exercise its jurisdiction to hear a challenge to a Texas Railroad Commission permit allowing the defendant to drill for oil on its land. 319 U.S. at 316-17. The Court noted that Texas had established the Commission in part to address issues related to oil extraction in the State. *See Id*. at 318-20. The Commission evaluated permit applications in the first instance, and its decisions were subject to review by the state district court in Travis County, as well as by the Court of Civil Appeals and the Texas Supreme Court. *Id*. at 325-26. Texas channeled judicial review through one county to assure uniformity. *Id*. at 326-27. In the judicial review procedure, the trial court determined whether the Commission acted reasonably, but also had authority to order a trial *de novo*. *Id*. at 326. The Supreme Court concluded that abstention was necessary because "[t]he very 'confusion' which the Texas legislature and Supreme Court feared might result from review by many state courts of the Railroad Commission's orders has resulted from the exercise of federal equity jurisdiction." *Id*. at 327.

15

What motivated the Court to abstain in *Burford* was the complexity of the issue, its importance to the State, the need for uniform regulation, the state procedures designed to prevent confusion, and the detrimental impact of ongoing federal review of the agency's orders. *Quackenbush*, 517 U.S. at 725.  The Court made a similar point in *Colorado River* when it noted that *Burford* was concerned with the "disruptive effect" on state management of oil and gas fields that federal review would have.  *Colorado River,* 424 U.S. at 815.

Although there is no "formulaic test," *Quackenbush*, 517 U.S. at 727, the basic analysis for determining when abstention under *Burford* is proper has been refined by the Supreme Court as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*NOPSI*, 491 U.S. at 361 (quotation marks and citations omitted).  *See also Quackenbush*, 517 U.S. at 726-27; *Ill. Bell Tel. Co., Inc. v. Global NAPs Ill., Inc.*, 551 F.3d 587, 595 (7th Cir. 2008).[5]

The first type of *Burford* abstention is not applicable here, because there are no "difficult questions of state law."  The second type of *Burford* abstention, however, may apply.  The key question is whether the potential for conflict is so great "as to impair impermissibly the State's effort to effect its policy."  *Colorado River*, 424 U.S. at 816.  Here, Indiana has acted to achieve

---

[5] While abstention has its origins in equity, the Supreme Court has noted that abstention can be appropriate in any case "in which the court has discretion to grant or deny relief." *Quackenbush*, 517 U.S. at 718.

its own environmental goals. The Indiana General Assembly has made its goals explicit; it designed its regulatory regime to provide for "comprehensive environmental development and control on a statewide basis," and "to unify, coordinate, and implement programs to provide for the most beneficial use of the resources of Indiana," as well as to preserve the environment for future generations of Indiana citizens. *See* Ind. Code § 13-12-3-1. In other words, in creating environmental regulations, Indiana has come up with a unique balance of economic, environmental, and natural resource allocation interests to best serve the people of Indiana. It thus exercised its "wide discretion in formulating its plan." *Union Elec.*, 427 U.S. at 250. Unlike the states' role as "ancillary enforcers" or "deputized federal regulators" in, for instance, the Telecommunications Act, *see Global NAPs*, 551 F.3d at 595 (quotation marks and brackets omitted), here Indiana is truly pursuing a local interest.

The EPA approved Indiana's Solid Waste Management Plan in 1982, finding that "the plan meets the requirements set forth in the RCRA." [DE 29, p.9]. The Plan is codified in Indiana statute at IC §13-21-1 *et seq.* Indiana concentrates its environmental authority in IDEM, an expert agency, which has been designated the "solid waste agency for Indiana for all purposes of the federal Resource Conservation and Recovery Act." IC §13-13-5-1(2). Finally, as discussed earlier, the substantive law applied within the Indiana regulatory regime is *state* - not *federal* - law.

In the end, plaintiffs want me to second-guess the IDEM's expert application of Indiana law with respect to enforcement of state regulations against defendants. The bottom line is this: plaintiffs think IDEM has not been as broad in its challenges to defendants' operation as it should have been. But the proper remedy is through the Indiana regulatory and state court

process; otherwise there is an impermissible risk of disrupting Indiana's attempt to ensure uniformity.  *See NOPSI*, 491 U.S. at 362 (holding that abstention was inappropriate because the case was "[u]nlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors").   So I believe the best course is to restrain from exercising my jurisdiction.

## CONCLUSION

Because I conclude that RCRA's statutory preclusion provisions apply to Count I, and that both forms of common law abstention are appropriate as to Counts I and II, defendants' **Motions to Dismiss [DE 12 & DE 19] are granted**, and Counts I and II are dismissed.  Having disposed of the two claims on which federal subject matter jurisdiction rests, I decline to exercise supplemental jurisdiction over the remaining state law claims, which are also dismissed.  The Clerk shall enter judgment effecting the dismissal, and all other pending motions are denied without prejudice.

**SO ORDERED**.

ENTERED:      April 21     , 2010            /s/ Philip P. Simon
                                              PHILIP P. SIMON, CHIEF JUDGE
                                              UNITED STATES DISTRICT COURT