## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CARMINE GREENE, ROBERT PEDZINSKI, ROBIN PEDZINSKI, JIM PENDERGRASS, BARBARA STUTSMAN and WAYNE STUTSMAN, individually and on behalf of all persons similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>KENNETH R. WILL, VIM RECYCLING, INC. K.C. INDUSTRIES, LLC., and SOIL SOLUTIONS COMPANY<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 3:09-CV-00510<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, by counsel, Kim E. Ferraro with the Legal Environmental Aid Foundation of Indiana, Inc., for their First Amended Class Action Complaint against Defendants, Kenneth R. Will, VIM Recycling, Inc., and K.C. Industries, LLC and Soil Solutions Company, hereby state as follows:

### NATURE OF THE ACTION

1.      This is a class action brought by and on behalf of approximately 1,700 people who live in an area of Elkhart, Indiana ("the Class area") that has been and continues to be harmed by a nearby waste processing facility owned and operated by the Defendants as further alleged below.

2.      For years, Defendants have and continue to store thousands of tons of wood wastes, engineered wood wastes, construction and demolition wastes, and other waste materials outdoors on property located at 29861 U.S. 33, in Elkhart, Indiana ("VIM facility" or "VIM site"). The massive waste piles are open dumped on bare earth, without the use of any barrier, lining, or containment system allowing contaminants to leach into the ground, attracting harmful vectors, such as mosquitoes,

1

termites and rodents, and posing a fire and safety hazard to the surrounding neighborhood where Plaintiffs reside and work. When the waste piles are unearthed and shifted, harmful emissions from decomposing, smoldering wood wastes and other waste materials are released into the atmosphere. Defendants also grind and process these waste materials outdoors without a baghouse or effective pollution control.

3.      Plaintiffs and members of the putative Class have frequently been exposed to smoke, dust, and extreme noxious odors from the dumping and processing of waste materials at the VIM site. Consequently, many Class members including children and the elderly have experienced headaches, eye, nose and throat irritation, chronic bronchitis, unexplained skin rashes, nose bleeds, difficulty breathing, asthma-like and other respiratory symptoms consistent with exposure to wood dust, particulate matter and oxygenated Volatile Organic Compounds emitted due to Defendants' operations at the VIM site.

4.      On countless occasions Plaintiffs and other Class members attended public hearings and meetings, signed petitions, and submitted oral and written complaints to their local, state and federal regulatory agencies, political representatives, the media, and Defendants, about health, safety, fire, noise, odors, aesthetic, rodent/vector, and pollution problems from Defendants' outside dumping, handling and processing of waste materials at the VIM site. Nevertheless, Defendants callously continued their harmful and unpermitted activities and turned a deaf ear and blind eye to the hundreds of neighbors' complaints of offensive smoke, dust and odors caused by the Defendants' reckless behavior. Indifference, if not conflicts of interest, by state and local officials and regulators including but not limited to the Elkhart County Commissioners and the Indiana Department of Environmental Management, leave injunctive relief the only hope of every plaintiff class member.

5.      Due to Defendants' activities and operations at the VIM site, Plaintiffs and members of the Class have been and continue to be exposed to fires, smoke, dust, debris, and extreme noxious

2

odors that invade their homes and community, interfering with Plaintiffs' and Class members' right to comfortable enjoyment and use of their properties, and diminishing the value of properties within the Class area.

6.     This action was initially filed on October 28, 2009 by more than 140 people who live within the Class area. Since that time, this case was dismissed for lack of subject matter jurisdiction and then appealed to the Seventh Circuit Court of Appeals which reversed the dismissal and remanded the case back to this Court for further proceedings. Also, since the initial filing, additional families not named in this lawsuit have come forward indicating that their homes and properties have also been harmed by the Defendants' past and continued operations. Finally, Defendant VIM Recycling, Inc. sold its assets and operations to Defendant Soil Solutions Company, now named as an additional Defendant for continuing the same harmful waste processing activities at the VIM site.

7.     This First Amended Class Action Complaint details, and ultimately prays that Defendants be held accountable for, Defendants' knowledge, acts and omissions which are responsible for the harm to properties within the Class area, including Plaintiffs' properties, and interference with Plaintiffs' and Class members' enjoyment and use of their properties.

## JURISDICTION AND VENUE

8.     This Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiffs assert a claim under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B). Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' state law claims which form part of the same case or controversy as Plaintiffs' RCRA claim. *See also Adkins v. VIM Recycling, Inc.*, 2011 U.S. App. LEXIS 9046, *21-22 (7th Cir. Ind. 2011)(holding that Plaintiffs in this case have alleged colorable claims for relief directly under RCRA [that are] . . . substantial enough to give [this Court] subject matter jurisdiction over the case, including supplemental jurisdiction over the plaintiffs' state law claims.").

3

9.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because this case arises out of actions occurring at, and pertaining to property located in Elkhart County, Indiana, within this judicial district.

## THE PARTIES

10.    Plaintiffs, Carmine Greene and Jim Pendergrass, are citizens of the State of Indiana who reside within this judicial district at 55943 River Shore Lane, Elkhart, Indiana. Plaintiffs, Robert and Robin Pedzinski, are citizens of the State of Indiana who reside within this judicial district at 29704 Cardinal Avenue, Elkhart, Indiana. Plaintiffs, Barbara and Wayne Stutsman, are citizens of the State of Indiana who reside within this judicial district at 29862 Cardinal Avenue, Elkhart, Indiana.

11.    Defendant, VIM Recycling, Inc. ("VIM"), is a For-Profit Foreign Corporation incorporated under the laws of the State of Illinois. VIM has owned and operated several waste processing facilities in Indiana including the facility at VIM site, where it has conducted certain activities including but not limited to outdoor storage, handling, grinding, processing, transporting and disposal of solid waste materials.

12.    Defendant, K.C. Industries, LLC, ("KC") is a Limited Liability Company organized under the laws of the State of Indiana. KC owns the property located at 29861 U.S. Highway 33, Elkhart, Indiana, where Defendants have and continue to conduct certain activities including but not limited to outdoor storage, handling, grinding, processing, transporting and disposal of solid waste materials.

13.    Defendant, Soil Solutions Company ("SOILS") is is For-Profit Corporation incorporated under the laws of the State of Indiana. SOILS purchased the assets of VIM in July of 2011 and is VIM's successor in interest with respect to addressing VIM's outstanding environmental violations and compliance issues. Along with Defendants KC and Kenneth R. Will, Defendant SOILS continues to conduct the same activities and operations at the VIM site including but not limited to outdoor storage,

4

handling, grinding, processing, transporting and disposal of solid waste materials.

14.     Defendant, Kenneth R. Will ("WILL"), is the President/Principal and Registered Agent of VIM, a Principal/Member and Registered Agent for KC, and/or an agent, apparent agent, servant and/or employee of SOILS.

## THE VIM FACILITY

15.     From 2000 to July of 2011, the Defendants VIM, KC and WILL ("VIM Defendants") owned and operated the VIM site where they transported, handled, processed, stored and disposed of various solid wastes including but not limited to: natural growth wood from tree cutting and brush clearing; untreated, uncoated woods from manufacturing such as wood skids for shipping ("A waste"); manufactured wood such as plywood, particle board, oriented strand board (OSB), luan and other "engineered" woods, primarily from the RV industry, which contain chemical binders, glues and resins ("B waste"); deteriorated B waste that can no longer be ground and used for animal bedding ("C waste"); construction and demolition waste including scrap lumber, wallboard/drywall, gypsum, roofing materials, plumbing and electrical fixtures, vinyl, plastic, carpet, bricks, concrete, glass, insulation and other building/structure materials ("C&D waste"); and biosolids from the Elkhart wastewater treatment plant. Old tires, metal objects, animal bones, and other wastes have also been dumped at the VIM site.

16.     Since the beginning of operations, the VIM Defendants dumped these wastes outdoors, on bare ground, without cover, lining, or containment. The waste piles cover many acres and some waste piles are or were at least fifty (50) feet high. In addition, VIM Defendants constructed perimeter berms at the VIM site out of solid waste materials despite the fact that officials from the Indiana Department of Environmental Management ("IDEM") advised Defendant, WILL, years ago, that berms were to be made of biomass only.

5

17.     In August of 2005, IDEM inspected the VIM Site because people living in the Class area, including Plaintiffs, had continued to complain of dust, odor, rodents, potential fire hazards and aesthetic issues associated with the large outdoor waste piles. During the inspection, IDEM determined, among other things, that VIM Defendants' outdoor storage of C waste constitutes "disposal of solid waste," "a threat to human health or the environment, including the creating of a fire hazard, vector attraction, air or water pollution, or other contamination," and constitutes an "open dump." IDEM notified Defendant WILL, that he was to "immediately cease storing/disposing any additional 'C grade' material at the Site." Nevertheless, VIM Defendants ignored IDEM's directive and, as of as of January 2006, they had dumped nearly fifty percent (50%) more waste on the C waste pile.

18.     On January 16, 2007, IDEM and Defendant WILL entered into Agreed Order 2006-15827-S ("2007 AO") under which Defendant WILL agreed, among other things, to "remove and properly dispose" of all C waste then existing at the VIM site by September 30, 2008. To this day, Defendants have failed to fully comply with the 2007 AO.

19.     On June 14, 2007, there was a catastrophic fire at the VIM Site that killed an undocumented VIM worker, seriously injured another, took 25-30 fire departments over four days to extinguish, and reduced much of the massive, outdoor waste piles to charred and smoldering debris. Many people living within the Class area were forced to flee their homes and stay in hotels or with relatives due to the significant amount of noxious smoke, odors and fumes released from the fire and from fear for their safety. The subsequent OSHA investigation revealed that the fire was due to an excessive build up of "explosive dust" created during the grinding process, VIM Defendants putting grinders in hazardous locations, and other "serious" safety violations that sparked a series of explosions inside the plant, and ignited the mountainous waste piles outside. The local fire department responded to at least twelve (12) fires at the VIM site prior to the June 2007 fire and have responded to countless more since then due to "material decomposition," "mulch pile fires," and "large wood pile fires."

6

20.     IDEM inspected the VIM site several times in July and August of 2007 because neighbors, including Plaintiffs and Class member herein, continued to complain of "odor, noise, and fugitive dust." IDEM found, among other things, that VIM Defendants were grinding regulated wastes outdoors without a solid waste processing permit and had not complied with the 2007 AO.

21.     During weekly visits from July through November of 2008, IDEM found that "the covered burnt C pile" was still "hot," "smoldering, and emitting "smoke" more than a year after the fire and that IDEM had "received phone calls of bad odor coming from the site" from people living in the Class area. Documenting VIM Defendants' deliberate refusal to comply with the 2007 AO, the IDEM inspector reported on each weekly visit that VIM Defendants had not taken any C waste to the landfill for proper disposal but, instead, continued to process it at the VIM site. Nevertheless, IDEM continued to look the other way and allowed VIM Defendants to continue its harmful and unpermitted operations with impunity.

22.     Subsequent to the June 2007 fire to the present time, Plaintiffs and other Class members have taken countless photographs, many provided to IDEM, depicting smoldering waste pile fires occurring at the VIM site. IDEM acknowledged that these photographs provided evidence of illegal open burning but deliberately decided not to take any action to enforce the open burning violations "so that [VIM Defendants] could concentrate on getting rid of the C pile required by the [2007 AO]." Even with IDEM's accommodation, VIM Defendants continued to refuse to get rid of the C pile allowing the smoldering fires, smoke and odors to continue making living conditions unbearable for nearby residents.

23.     Finally, on October 3, 2008, IDEM filed an enforcement action against VIM Defendants in Elkhart Circuit Court for VIM Defendants' failure to comply with terms of the 2007 AO including VIM Defendants' failure to remove and properly dispose of the C waste pile (Elkhart County Circuit Court, Cause No. 20C01-0810-PL-00076 - "IDEM's 2008 lawsuit"). Ignoring the lawsuit, VIM

7

Defendants continued to dump more solid waste without proper permits and refused to properly dispose of the smoldering C waste pile. To date, Defendants have not complied with the terms of the 2007 AO and because IDEM has not taken any action, much less "diligent" action, to prosecute its 2008 lawsuit, the Elkhart Circuit Court issued a motion and order to show cause why the case should not be dismissed. One day before the court's hearing set for September 9, 2011, IDEM moved to vacate the hearing with agreement from VIM's counsel that "Respondent's Site [the VIM site] is still in violation with applicable environmental laws and Respondents [VIM Recycling, Inc.] have not fully complied with the January 16, 2007 Agreed Order. [However,] "IDEM anticipates that the violations may be resolved by [Soil Solutions Company] new owners of the site.[1]" The court granted IDEM's request.

24.    Subsequent to filing its first lawsuit in 2008, IDEM continued to regularly inspect the VIM site and consistently found, among other things, that VIM Defendants continued to allow C wastes to remain open dumped at the VIM site, were open dumping additional regulated wastes at the VIM site, and were processing wastes without necessary permits. On at least one occasion, the IDEM inspector reported experiencing a severe headache and burning sensations in his eyes, nose and throat that lasted about forty-eight (48) hours before dissipating - the same symptoms Plaintiffs and Class members have reported experiencing since VIM Defendants began operations in their neighborhood.

25.    Despite these findings, IDEM continued its apathetic stance toward the community's complaints and allowed the Defendants to continue its illicit operations without consequence. Consequently, on April 16, 2009, Plaintiffs served Notice of their intent to file suit against the VIM Defendants under RCRA for creating conditions at the VIM site that present or may present an imminent and substantial endangerment to health and environment.

26.    After receiving Plaintiffs' Notice of Intent to Sue, representatives of the U.S. Environmental Protection Agency ("EPA") inspected the VIM site on May 5, 2009. Confirming

---

[1]    Unopposed Motion to Vacate Hearing, *Commissioner, IDEM v. VIM Recycling, Inc.,* Elkhart Circuit Court No 43C01-0902-PL-000107 (Sept. 7, 2011).

Plaintiffs' and other Class members' numerous complaints of fire, smoke and noxious odors emanating from the VIM site, EPA found that VIM Defendants were engaged in open burning and noted that air in the neighborhood directly downwind of the VIM facility smelled of acrid smoke.

27.     Resolving this open burning violation under the Clean Air Act ("CAA"), EPA's Administrative Consent Order ("ACO") required VIM Defendants to remove only the "mixed construction and demolition debris greater than four (4) inches in diameter, contained in the C piles" while allowing "smaller materials, i.e. less than four (4) inches in diameter, [to] remain on site."

28.     During the process of sifting and separating the larger debris from the long open dumped and smoldering C waste, Plaintiffs and Class members were exposed to substantial and uncontrolled emissions of Volatile Organic Compounds ("VOCs"), Particulate Matter ("PM") and other harmful air pollutants, noxious fumes, gases, odors and smoke. The C waste, not addressed by EPA's ACO, remains on site to this day and continues to smolder and produce harmful emissions and odors that invade homes and properties in the Class area.

29.     Plaintiffs filed this action in October, 2009 to, in part, address VIM Defendants' open dumping of waste, including B waste, at the VIM site. Instead of intervening in Plaintiffs' ongoing action, IDEM instead filed a second enforcement action on December 21, 2009 against VIM Defendants, to address VIM Defendants' blatant open dumping of B waste in front of EPA and IDEM officials ("IDEM's 2009 lawsuit"). As explained by the Indiana Attorney General in an official press release:

> Given the history of environmental and other violations by VIM Recycling, the recent illegal dumping was the last straw. This company has been given multiple opportunities by the State of Indiana. They've just run out of second chances.[2]

Moreover, IDEM's Verified Complaint states:

---

[2] Press Release, Office of the Indiana Attorney General, *Attorney General Files Environmental Suit Against Wood Recycler in Elkhart County* (Dec. 21, 2009).

[VIM Defendants'] continuing violations and failure to cooperate with IDEM officials indicate a pattern of non-compliance which must be abated to prevent further actual and potential damage to public health and the environment.[3]

30.     The Attorney General's strong rebuke aside, this second IDEM lawsuit has resulted in a court approved agreed order requiring VIM Defendants to move only a portion of the long open dumped B waste pile inside a building at the VIM site while allowing the remainder of the B waste to sit open dumped outside. Now in contempt of this court order, VIM Defendants have wholly failed to comply with even this minimal requirement.[4]  And, allowing VIM Defendants to benefit from their illegal behavior yet again, IDEM issued permits allowing Defendant SOILS, along with Defendants KC and WILL, to continue outdoor storing, handling, and processing of wastes at the VIM site and considers the sale of VIM Defendants' assets to SOILS as a reason not to hold VIM Defendants' accountable for failing to comply with a court sanctioned agreed order.[5]

### Harm to Plaintiffs and Class Members

31.     From July 2000 to the present date, Plaintiffs and Class members have and continue to fear for their safety as a direct and proximate result of Defendants' handling, storage, transporting, processing and disposal of solid waste at the VIM site.

32.     The massive waste piles accumulated at the VIM site are unsightly and clearly visible to Plaintiffs and Class members. Much of the older debris has rotted, molded, and leached contaminants into the environment, attracted harmful vectors, such as mosquitoes and rodents.

---

[3] *See Attorney General v. VIM Recycling, Inc.,* Verified Complaint for Preliminary and Permanent Injunction and for Civil Penalties, Elkhart Superior Court, Cause No: 20D01-0912-CC-619 (Dec. 21, 2009).

[4] *See* Order on Petitioner's Rule to Show Cause, *Attorney General v. VIM Recycling, Inc.,* Cause No: 20D01-0912-CC-619 (July 13, 2011).

[5] *Id.* at FN 3 (Judge Evan Roberts is clearly troubled by this development as well stating "VIM's defense seemingly lies in that the assets and business (i.e. VIM) have been or will be sold on or about July 7, 2011. Troubling to the court is the fact that agreement reached by the parties has admittedly not been complied with and the proposed sale will arguable do little other than 'pass the issue on' to the company purchasing the business. Moreover, the Agreed Order was between Petitioner and Respondent; not a new company. Hence, the court is left wondering how it will be able to enforce the Agreed Order hereafter or why a Rule was filed.  Stated differently, what was the purpose of the Agreed Order?"

33.     Defendants' operations pose a constant threat of another catastrophic fire which could easily spread to adjacent properties where Plaintiffs and Class members live and work.

34.     On countless occasions, Class members have observed plumes of smoke coming from internal and smoldering combustion of the various waste piles at the VIM site, have heard the Defendants' grinders or machinery operating in the middle of the night, and have been awakened by loud noises, lights, noxious odors, fumes, and smoke emanating from the VIM site.

35.     Defendants' operations release fugitive dust including wood dust laden with chemicals, glues, and resins that collects on Plaintiffs' and Class members' homes, cars, decks, patio furniture, pools, bird baths, air and heating vents, lawns. Plaintiffs and Class members must keep their windows closed to avoid the smoke, odor, dust and debris from the VIM site.

36.     Smoldering combustion of wood waste releases emissions of a class of compounds known as oxygenated volatile organic compounds ("VOCs"). These emissions are significantly increased under lower temperature and oxygen conditions associated with smoldering combustion. Oxygenated VOCs are potent irritants of the eyes, nose and upper respiratory tract. Grinding, processing and storing of wood waste outdoors is also known to release significant wood dust into the air with adverse implications for human health including irritation to the eyes, skin, nose throat and lungs. Prolonged or repeated inhalation of wood dusts is known to cause respiratory irritation, recurrent bronchitis, prolonged colds, asthma-like symptoms and is associated with nasal and paranasal cancer.

37.     Plaintiffs and members of the Class, including children and the elderly, report experiencing severe headaches, eye, nose and throat irritation, chronic bronchitis, unexplained skin rashes, nausea, nose bleeds, difficulty breathing, asthma-like and other respiratory symptoms consistent with exposure to oxygenated VOCs, PM and wood dust - symptoms they never experienced before VIM moved into their community and that abate when they leave the area.

11

## CLASS ALLEGATIONS

38.   Plaintiffs bring each of the claims in this action in their own names and on behalf of a class of all persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

39.   The Class consists of all persons who, within the statutory period prior to the filing of this action to date, have owned or resided on real property located within the geographical boundaries specified on the figure attached hereto as Exhibit 1 ("the Class area") including but not limited to the named Plaintiffs who initiated this lawsuit on October 28, 2011. Plaintiffs' homes and those of the near 150 people who initiated this lawsuit are located within the Class area.

40.   The Class area consists of approximately 600 homes and more than 1,700 people, and is accordingly so numerous that joinder of all members is impractical.

41.   There are core questions of law and fact that are common to each member of the Class, such as: whether Defendants have been negligent in their operation of the VIM site; whether there have been releases of harmful emissions, substances and wastes at and from the VIM facility into the Class area; and whether those harmful emissions, substances and wastes have caused harm to properties within the Class area.

42.   Plaintiffs' claims are typical of the claims of the Class. All claims seek recovery on the same legal theories and are based upon Defendants' common course of conduct.

43.   Plaintiffs will fairly and adequately represent and protect the interests of the Class.

44.   Plaintiffs are represented by competent counsel experienced in public interest environmental law and litigation, and the law and facts of this case.

### COUNT I - (RCRA) 42 USC § 6972(a)(1)(B)

45.   Plaintiffs, individually and on behalf of the Class defined herein, repeat, restate and reallege each and every allegation contained in paragraphs 1 through 44, above as through fully set forth in this Count I.

12

46.    The wood waste, engineered wood waste, construction and demolition waste, and other waste materials that have been and are handled, stored, transported, processed and/or disposed by VIM Defendants at the VIM site are "solid wastes" under RCRA. 42 U.S.C. § 6901, *et. seq.*

47.    VIM Defendants are "persons" within the meaning of RCRA. 42 U.S.C. § 6903(15).

48.    VIM Defendants' past and continued solid waste handling, transportation, processing, and/or disposal of solid waste at the VIM site has and continues to create conditions that present or may present an imminent and substantial endangerment to health and the environment of Plaintiffs and members of the Class. The endangerment is a result of past and/or present handling, storage, treatment, transportation, and/or disposal of solid waste, including but not limited to A, B, C, C&D wastes, and berms made of solid waste materials, at the VIM site.

49.    VIM Defendants contributed to the past or present handling, storage, treatment, transportation, and/or disposal of the wastes at the VIM site, including but not limited to A, B, C, C&D wastes, and berms made of solid waste materials, that are creating the endangerment and, therefore, are subject to suit pursuant to 42 U.S.C. § 6972(a)(1)(B).

50.    On April 16, 2009, Plaintiffs served a Notice of Intent to File Suit ("NOI") as required by 42 U.S.C. § 6972(b) and 40 CFR § 254.2(a)(1) on all VIM Defendants by certified mail, return receipt requested. Copies of the NOI were mailed to the Administrator of the EPA, the Regional Administrator of the EPA for Region V, the Attorney General of the United States, the Commissioner of IDEM, the Attorney General of the State of Indiana, and the Regional Director of IDEM's Northern Regional Office. The NOI was received by the VIM Defendants and government agencies more than 90 days prior to the filing of this action on October 27, 2009. During the notice period, neither EPA nor IDEM filed a lawsuit to assert Plaintiffs' proposed claims under 42 U.S.C. § 6972(a)(1)(B) against the VIM Defendants.

51.     Plaintiffs are not aware of any action taken on behalf of the United States, any federal agency, the State of Indiana, or any Indiana agency to commence and diligently prosecute an action under RCRA or the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) 42 USC §§ 9601, *et. seq.* to restrain or abate conditions that may pose an imminent and substantial endangerment at the VIM site and/or which would preclude Plaintiffs from pursuing a claim against the VIM Defendants under 42 U.S.C. § 6972(a)(1)(B). Indeed, the Seventh Circuit Court of Appeals considered this issue, in this case, and specifically held that Plaintiffs' citizen suit "should go forward except as to the *violation claims* [(a)(1)(A) claims] concerning 'C' grade waste that were part of the first IDEM lawsuit against defendant VIM." *Adkins v. VIM Recycling, Inc.,* 2011 U.S. App. LEXIS 9046, *65-66 (7th Cir. Ind. 2011)(emphasis added).

52.     Accordingly, Plaintiffs may bring and pursue this action against the VIM Defendants, under 42 U.S.C. § 6972(a)(1)(B), to restrain or abate acts and conditions at the VIM site that present or may present an imminent and substantial endangerment to health and environment. This Court has jurisdiction under  42 U.S.C. § 6972(a) to enter injunctive relief ordering VIM Defendants to cease and desist operations at the VIM site, to remove all wastes from the VIM site and further remediate the site and take other action as may be necessary to abate the imminent and substantial endangerment at the site. Under RCRA, this Court should also award Plaintiffs their costs of litigation including reasonable attorney's and expert witness' fees, and impose any appropriate civil penalties.

53.     Pursuant to 42 U.S.C. § 6972(b)(2)(F), Plaintiffs will serve a copy of this First Amended Class Action Complaint on the Attorney General of the United States, the U.S. EPA Administrator, the Commissioner of IDEM and the Attorney General of the State of Indiana.

## COUNT II - PRIVATE NUISANCE

54.     Plaintiffs, individually, and on behalf of the Class, repeat, restate and reallege each and every allegation contained in paragraphs 1 through 44, above as though fully set forth in this Count II.

14

55.     Defendants' past and ongoing operations and activities at the VIM site have created conditions that are: injurious to the health; indecent and offensive to the senses; and an obstruction to the free use of properties owned or possessed by Plaintiffs and Class members thereby interfering with Plaintiffs' and Class members' comfortable enjoyment of life or property and, constituting a private nuisance as defined in Ind. Code § 32-30-6-6.

56.     Defendants have been aware of nuisance conditions that exist at the VIM site for years yet they have allowed those nuisance conditions to continue to this day.

57.     Defendants remain in control of the VIM facility with respect to addressing activities and conditions at the VIM site which have and continue to impact neighboring properties in the Class area.

58.     Defendants have failed to comply with applicable laws enacted to protect public health, safety and environment and have failed to properly dispose of, contain and abate harmful wastes, fumes, smoke, debris, odors and emissions at, and released from, the VIM site constituting an unreasonable, unwarranted and unlawful use of the VIM site. Defendants' control and maintenance of this nuisance has substantially interfered with Plaintiffs' and the Class members' reasonable use and enjoyment of their properties.

59.     Plaintiffs and members of the Class have incurred substantial damage as a result of the private nuisance created by Defendants' past and continued activities and operations at the VIM facility. In addition to damages, Plaintiffs seek injunctive relief to restrain and enjoin Defendants' from causing further harm to properties in the Class area, compelling Defendants' to cease and desist all waste operations at the VIM site, remove all wastes from the VIM site, and further remediate the site and take other action as may be necessary to abate nuisance conditions in the Class area due to activities and operations at the VIM site.

15

## COUNT III - TRESPASS

60.     Plaintiffs, individually and on behalf of the Class as defined herein, repeat, restate and reallege each and every allegation contained in paragraphs 1 through 44, above as through fully set forth in this Count III.

61.     Defendants have and continue to negligently and/or knowingly and intentionally cause or allow harmful air pollutants, gases, noxious odors, smoke, wastes, contaminants, garbage, dusts and debris to enter and invade properties owned and/or possessed by Plaintiffs and members of the Class.

62.     Defendants' negligent and/or intentional conduct constitutes a continuing trespass on properties owned and/or possessed by Plaintiffs and Class members.

63.     The invasion of Plaintiffs' and Class area properties is unreasonable and unlawful. As a result of the Defendants' continuing trespass, the lawful rights of Plaintiffs and the Class to use and enjoy their properties have been substantially interfered with, and Plaintiffs and the Class have been damaged. In addition to damages, Plaintiffs also seek injunctive relief ordering Defendants to cease and desist all waste operations at the VIM site, remove all wastes from the VIM site and further remediate the site and take other action as may be necessary to abate the continuing trespass of properties within the Class area.

## COUNT IV - NEGLIGENCE

64.     Plaintiffs, individually and on behalf of the Class defined herein, repeat, restate and reallege each and every allegation contained in paragraphs 1 through 44, above as through fully set forth in this Count IV.

65.     At all times relevant herein, the Defendant VIM has had various principals, members, agents, servants and/or employees acting on its behalf including but not limited to the Defendant WILL, to manage, direct, operate, and control its business activities and operations at the VIM site.

16

66. At all times relevant herein, the Defendant KC has had various officers, directors, agents, servants and/or employees acting on its behalf, including but not limited to the Defendant WILL, to manage, direct, operate and control its business activities and use of its real property including the VIM site.

67. From February 2010 to the present date, the Defendant SOILS has had various principals, members, agents, apparent agents, servants and/or employees acting on its behalf including but not limited to the Defendant WILL, to manage, direct, operate, and control its business activities and operations at the VIM site.

68. At all times relevant herein, Defendant WILL acted individually and/or as a principal, member, agent, apparent agent, servant and/or employee of VIM, KC and/or SOILS in the operation, management, direction, and/or control of the VIM facility, and/or use of real property owned by KC including the VIM site.

69. At all times relevant herein, the Defendants had and have a duty to manage, operate, direct and control Defendants' activities, operations and use of the VIM site in accordance with all applicable laws and regulations.

70. At all times relevant herein, the Defendants, had and have a duty to manage, operate, direct and control activities, operations and the use of real property at the VIM site a reasonable manner and condition so as not to substantially injure the property interests of others including Plaintiffs and Class members herein.

71. At all times relevant herein, it was the duty of the Defendants to exercise ordinary care in managing, operating, directing and controlling activities, operations and the use of real property at the VIM site so as not to cause injury or harm to the property interests of others including Plaintiffs and Class members herein.

72.     Notwithstanding the aforesaid duties, the Defendants committed the following acts and/or omissions:

    a.      failed to manage, operate, direct and control activities and use of real property at the VIM site in accordance with all applicable laws, statutes and regulations;

    b.      failed to manage, operate, direct and control activities and the use of real property at the VIM site in a reasonable manner and condition so as not to substantially injure the property interests of others including Plaintiffs and Class members herein;

    c.      failed to exercise ordinary care in managing, operating, directing and controlling activities and/or the use of real property at the VIM site.

73.     Defendants' breaches of their duties to Plaintiffs and the Class are continuing and have caused substantial injury and damage to Plaintiffs and the Class, including, but not limited to, injury in the form of damages to their property, loss of property value, loss of the reasonable use and enjoyment of their property, and aggravation and annoyance. In addition to compensatory damages, Plaintiffs also seek injunctive relief ordering the Defendants to cease and desist all operations at the VIM site, remove all wastes from the VIM site and further remediate the site and take other action as may be necessary to abate the harm in the Class area caused from Defendants' continued activities and operations at the VIM site.

## COUNT V - WILFUL AND WANTON MISCONDUCT

74.     Plaintiffs, individually and on behalf of the Class as defined herein, repeat, restate and reallege each and every allegation contained in paragraphs 1 through 44, above as through fully set forth in this Count V.

75.     VIM Defendants have acted in a willful and wanton manner and in reckless indifference to Plaintiffs' and other Class members' health and property, and with reckless indifference to the health and safety of the general public. Specifically, the Defendants knowingly, intentionally, willfully, wantonly and/or recklessly:

18

a.      violated applicable laws, statutes and regulations meant to protect public health, safety and environment;

b.      maintained an open dump and engaged in open dumping at the VIM site;

c.      constructed and operated a solid waste processing facility at the VIM site without proper permits;

d.      caused or allowed and continue to cause or allow harmful emissions, wastes and substances to be dispersed into the Class area;

e.      caused or allowed and continue to cause or allow contamination of soils and surface waters into the Class area;

f.      caused or allowed and continue to cause or allow a fire and safety hazard to exist in the Class area;

g.      handled, transported, processed and disposed of harmful wastes with utter disregard for the safety, health and well-being of other persons including Plaintiffs and Class members.

76.     As a direct and proximate result of the VIM Defendants' intentional, willful, wanton and reckless acts and/or omissions, Plaintiffs and the Class have sustained damages and, in accordance with Ind. Code § 34-51-3-4, Plaintiffs and the Class are entitled to the recovery of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class as defined herein, respectfully request that this Court enter judgment in their favor and against the Defendants, and request:

A.      that the Court certify Plaintiffs' action as a class action on behalf of all others similarly situated, appoint Plaintiffs' counsel as counsel for the Class, and order that Notice be given to the Class of this action;

B.      that pursuant to Plaintiffs' RCRA and common law claims, the Court permanently restrain and enjoin the Defendants from causing further harm to properties in the Class area, compelling Defendants to cease and desist all operations at the VIM site, remove all wastes from the VIM site, and

further remediate the site and take other action as may be necessary to abate harmful conditions in the Class area caused by Defendants' activities and operations at the VIM site.

        C.     that the Court award Plaintiffs and the Class compensatory and other appropriate damages in an amount to be determined by the evidence at trial and allowed by law;

        D.     that the Court award Plaintiffs and the Class punitive damages as allowed by law and in an amount sufficient to deter Defendants and others who are similarly situated from acting in a similar manner;

        E.     that pursuant to Plaintiffs' RCRA claim, the Court award Plaintiffs and the Class their costs of litigation, including reasonable attorney and expert witness fees; and

        F.     that the Court award Plaintiffs and the Class their costs of suit and such other and further relief as the Court deems appropriate and just.

**JURY TRIAL DEMANDED**

Plaintiffs request trial by jury on all issues so triable.

DATED: September 12, 2011.

                          Respectfully submitted,

                          CARMINE   GREENE,   ROBERT   PEDZINSKI,   ROBIN PEDZINSKI, JIM PENDERGRASS, BARBARA and WAYNE STUTSMAN, individually and on behalf of all persons similarly situated.

                          By: _Kim E. Ferraro_

                          Kim E. Ferraro, Counsel for Plaintiffs
                          Legal Environmental Aid Foundation of Indiana, Inc.
                          150 Lincolnway, Suite 3002
                          Valparaiso, IN 46383

**VERIFICATION**

        I affirm, under the penalties for perjury, that the foregoing representations are true.

Date: _9/12/11_                 _Kim E. Ferraro_

                          Kim E. Ferraro, Attorney No. 27102-64

20

## CERTIFICATE OF SERVICE

Kim E. Ferraro, an attorney, hereby certifies that a true and correct copy of the foregoing First Amended Class Action Complaint was electronically served on all counsel of record as a result of the CM/ECF filing of this document and the following listed parties by Certified Mail, Return Receipt Requested.

_Kim E. Ferraro_
Kim E. Ferraro

Sue A. Shadley
Amy E. Romig
Jonathan P. Emenhiser
PLEWS SHADLEY RACHER & BRAUN LLP
1346 N. Delaware Street
Indianapolis, Indiana 46202

Bruce P. Clark & Associates
7880 Wicher Avenue, #300
St. John, Indiana 46373

Soil Solutions Company
Registered Agent: Dallas D. Day
5430 Ferguson Road
Fort Wayne, IN 46809
Principal Office:
6600 West 200 South
Lafayette, IN 47909

Lisa Jackson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building (AR)
1200 Pennsylvania Avenue N.W.
Washington, DC 20004

Susan Hedman, Regional Administrator
U.S. Environmental Protection Agency, Region V
Ralph Metcalfe Federal Building
77 W. Jackson Blvd.
Chicago, IL 60604

Eric H. Holder, Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue N.W.
Washington, DC 20530


Thomas Easterly, Commissioner
Indiana Department of Environmental Management
100 N. Senate Avenue, Room IGCN 301
Indianapolis, IN 46204


Greg Zoeller, Indiana Attorney General
Indiana Government Center South
302 W. Washington Street, 5th Floor
Indianapolis, IN 46204