UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CARMINE GREENE, et. al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Cause No. 3:09CV510-PPS |
| | ) |
| KENNETH R. WILL, et. al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER
GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AGAINST DEFENDANTS KENNETH R. WILL,
VIM RECYCLING, INC. AND K.C. INDUSTRIES, LLC**

Plaintiffs in this action seek a default judgment and an award of attorney's fees and expenses against Defendants Kenneth R. Will, VIM Recycling, Inc. and K.C. Industries, LLC ("VIM Defendants"). [DE 214 and 216.] The motions were served on the VIM Defendants, who did not file a written response. A hearing was held at which Defendant Will appeared, and additional briefing followed.

## I. Procedural History

This lawsuit was filed by 140 people who live in close proximity to a waste dump and processing facility that was built, owned, controlled, and operated by the VIM Defendants beginning in early 2000 through July 25, 2011, when the VIM Defendants sold the facility and operations to Soil Solutions Co. and its subsidiary Soil Solutions of Elkhart, LLC. [DE 1 and DE 152.] Plaintiffs subsequently amended their complaint to

name the Soils Defendants and pled allegations in support of class certification. [DE 152.]

I certified the case as a class action pursuant to Fed. R. Civ. P 23, appointing Plaintiffs Carmine Greene, Robert Pedzinski, Robin Pedzinski, Jim Pendergrass, Barbara Stutsman, and Wayne Stutsman as class representatives, and certifying a Plaintiff class to include: "All persons, who from October 28, 2003 to April 16, 2013 have owned or resided on residential property that is within the geographical boundaries ('Class Area') specified and described in Exhibit 1." [DE 176 at 4.][1] In total, there are 1,212 parcels owned by 1,040 people in the Class Area. [DE 214-3.] Fifteen of those residents chose to opt out of the Class [DE 207-3], leaving 1,025 Class members.

Following class certification proceedings, Plaintiffs and the Soils Defendants reached a settlement whereby Soils agreed, among other things, to wind down and cease operations at the facility within five years, clean up all wastes from the site, and file a deed restriction preventing such operations at the site in the future. [DE 207.] The settlement fully resolved the claims against the Soils Defendants.

The VIM Defendants are a different story. Each of those defendants failed to plead or otherwise defend, and an entry of default was made against them. [DE 126 and 162.] Plaintiffs now seek a default judgment against the VIM Defendants.

---

[1] Exhibit 1 in the foregoing class definition refers to a 15-point description of the geographic boundaries of the Class Area, plus a marked Class Boundary Map. [DE 176-1, 176-2.]

## II. Legal Standards for Entry of Default Judgment

Default judgment are no longer disfavored. *Pretzel & Stouffer v. Imperial Adjustors, Inc.*, 28 F.3d 42, 47 (7th Cir. 1994). And the decision to grant a default judgment motion under Fed. R. Civ. P. 55(b) is within the sound discretion of the district court. *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir.1993); *Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir.2003); *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1322 (7th Cir. 1983). When a default is entered, the court takes the well-pleaded factual allegations of the complaint relating to liability as true. *Dundee Cement Co,* 722 F.2d at 1323. Thus, if the complaint establishes the requisite elements of liability for a claim, a plaintiff is entitled to relief on that claim. *See In re Catt*, 368 F.3d 789, 793 (7th Cir.2004).

A court must ascertain damages to a "reasonable certainty," and the relief must not exceed what is demanded in the pleadings. *In re Catt,* 368 F.3d at 793; Fed.R.Civ.P. 54(c). Once the fact of damage has been established, a district court, without a jury, has considerable latitude in determining the appropriate amount of damages to award. *Jones v. Winnepesaukee Realty,* 990 F.2d 1, 25 (1st Cir. 1993). To that end, the court may, but is not required to, conduct a hearing, and may consider affidavits, pleadings, or other proper documentary evidence in accordance with Fed. R. Civ. P. 55(b)(2). *Dundee Cement Co.,* 722 F.2d at 1323; *O'Brien,* 998 F.2d at 1404.

There are seven counts in the Amended Complaint: Counts I (Resource Conservation and Recovery Act (RCRA) claim-VIM Defendants), Count II (RCRA

3

claim-Soils Defendants), Count III (private nuisance-all defendants), Count IV (trespass-all defendants), Count V (negligence-all defendants), Count VI (wilful and wanton misconduct-VIM Defendants), Count VII (successor liability-Soils Defendants). [DE 152.] Plaintiffs' settlement with the Soils Defendants resolved Counts II and VII, leaving Counts I, III, IV, V and VI pending against the VIM Defendants. Of these, Plaintiffs seek default judgment only for damages recoverable on their nuisance claim in Count III and attorney's fees and costs as available on their RCRA claim in Count I.

Piecing together what Plaintiffs have articulated at the hearing and briefed in response to my post-hearing order, Plaintiffs seek nuisance damages against VIM Recycling and K.C. Industries jointly and severally, and seek an award of attorney's fees and costs under RCRA against all three VIM Defendants, including individual defendant Will. [DE 214-1 at 4, DE 220 at 12.]

### III. The Nuisance Claim in Count III

Indiana's nuisance statute states that "[w]hatever is injurious to health, indecent, offensive to the senses, or an obstruction to the free use of property so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." Ind. Code § 32-30-6-6 (internal punctuation omitted). "An action to abate or enjoin a nuisance may be brought by any person whose property is injuriously affected or personal enjoyment is lessened by the nuisance." Ind. Code § 32-30-6-7 (internal punctuation and numbering omitted). "If a proper case is made, the nuisance

4

may be enjoined or abated and damages recovered for the nuisance." Ind. Code § 32-30-6-8.

A "nuisance" is "[a]ny condition created by one which causes another reasonably to be constantly apprehensive of injury to his life or property." *Zeppenfeld v. Franklin Motor Service Co.*, 77 Ind. App. 687, 694, 134 N.E. 487 (Ind. App. 1922). No actual damage to property need be shown to prevail in an action for nuisance. *Muehlman v. Keilman,* 257 Ind. 100, 104, 272 N.E.2d 591 (Ind. 1971). As explained by the Indiana Supreme Court in *Muehlman*, "[i]f dust, dirt, smoke and offensive odors essentially interfere with the comfortable enjoyment of the house, the [nuisance] action might be maintained, although not a penny's value of injury was done to the house itself." *Id.* at 594 (quoting *Owen v. Phillips,* 73 Ind. 284 (1881)).

So activities on property which create noxious odors and emissions that interfere with a neighboring landowner's comfortable use of his property are exactly the sort of activities that Indiana's nuisance statute is meant to address. *See Stickdorn v. Zook,* 957 N.E.2d 1014, 1023 (Ind. App. 2011) (finding that odors from the Defendants' "repeated manure spills, improper spreading of the waste on their fields, and the refusal to put a cover on their manure pit amount[ed] to an intermittent, abatable nuisance."); *Bonewitz v. Parker,* 912 N.E.2d 378, 382 (Ind. App. 2009) (finding that emissions, gases and odors that permeated plaintiffs' home and precluded the use of their yard from defendant's saw-dust burning furnace located approximately 100 to 150 feet away from plaintiffs'

5

home were not mere annoyances or inconveniences, but nuisance conditions "greater than they should be required to bear.")

"The principal elements of damages [for a private nuisance] are the value attached to the use or enjoyment of property of which [a Plaintiff] has been deprived" and "the value of any personal discomfort or inconvenience which the plaintiff has suffered, or of any injury to health or other personal injury sustained by the plaintiff, or by members of his family so far as they affect his own enjoyment of the premises, as well as any reasonable expenses which he has incurred on account of the nuisance." *Lesh v. Chandler*, 944 N.E.2d 942, 955 (Ind. App. 2011). So Plaintiffs' damages for nuisance include the loss of use and enjoyment of their properties and the personal discomfort and inconvenience caused by VIM Defendants' operations from October 28, 2003 to July 25, 2011.

Unlike some states, Indiana has no particular statutory restriction on nuisance damages. Ind. Code § 32-30-6-8. Rather, "[t]he computation of damages, if supported by evidence, is within the trial court's discretion." *Id.* Moreover, in computing compensatory damages resulting from a nuisance, there is no precise formula, bright line test or "arithmetical rule for the estimate of such damages." *Id.* Put another way, the award of damages for nuisance requires "no particular degree of mathematical certainty." *Ballard v. Harman*, 737 N.E.2d 411, 417 (Ind. App. 2000). Where the plaintiff is legally entitled to an award of damages, "it cannot be denied upon the ground that the measure of damages is difficult to ascertain." *NIPSCO v. Vesey*, 210 Ind. 338, 357,

200 N.E. 620, 628 (1936). The burden of proof is on the plaintiff, but "public policy and justice require that the risk of uncertainty in the computation of damages be borne by the wrongdoer." *Weston v. Buckley*, 677 N.E. 2d 1089, 1093 (Ind. App. 1997).

Plaintiffs have submitted sufficient evidence of their nuisance damages caused by the VIM Defendants. The evidence comes from the pleadings, discovery taken in the case, photographs and from expert testimony. What follows is an overview of each of those different categories of evidence.

Because the VIM Defendants are in default, the factual allegations in the Second Amended Complaint [DE 152] are deemed and accepted as true. These allegations describe how the VIM Defendants created an unpermitted and unsightly waste dump; improperly disposed of, processed, and handled harmful wastes; caused repeated and deadly fires that spewed acrid smoke into the Class Area; and caused constant dust and extreme noxious odors to repeatedly invade Plaintiffs' homes and properties. [DE 152, ¶¶17 to 45.] Moreover, the Complaint details how a "catastrophic fire" at the facility forced "many people living within the Class area . . . to flee their homes and stay in hotels or with relatives due to the significant amount of noxious smoke, odors and fumes released from the fire and out of fear for their safety." [DE 152, ¶21.]

Concerning the Class members' loss of use and enjoyment of property, the Complaint describes how the VIM Defendants allowed massive, unsightly waste piles to accumulate at the site which were clearly visible to Class members. [DE 152, ¶40.] On "countless occasions," Class members "heard the [VIM] Defendants' grinders or

7

machinery operating in the middle of the night," and were "awakened by loud noises, lights, noxious odors, fumes, and smoke emanating from the Site." [DE 152, ¶42.] VIM Defendants' operations released toxic dusts that "collect[ed] on Plaintiffs' and Class members' homes, cars, decks, patio furniture, pools, bird baths, air and heating vents, and lawns" and forced Class members to "keep their windows closed to avoid the smoke, odor, dust and debris from the Site." [DE 152, ¶43.]

Allegations that support the Class members' damages for personal discomfort and inconvenience include that the VIM Defendants refused to clean up smoldering waste piles, which caused "smoke and odors to continually make living conditions unbearable for nearby residents." [DE 152, ¶25.] Class members:

> complain[ed] of severe headaches, eye, nose and throat irritation, chronic bronchitis, unexplained skin rashes, nausea, nose bleeds, difficulty breathing, asthma-like and other respiratory symptoms consistent with exposure to oxygenated VOCs, PM$^2$ and wood dust – symptoms they never experienced before the VIM Defendants began operating in their community – and symptoms that abate[d] when they [left] the area.

[DE 152, ¶45.]

Plaintiffs have provided the sworn interrogatory answers of 140 Class members [DE 214-5] who live at varying distances from the VIM facility. [DE 214-6, DE 214-7.] In their answers, many describe deplorable living conditions caused by the VIM Defendants. These conditions have made it impossible for the Class members to enjoy the outdoors in their neighborhood due to "moldy, burning rotten egg smells" and

---

[2] "VOCs" are "Volatile Organic Compounds," and "PM" is "Particulate Matter." [DE 152, ¶33.]

"smoke and black grime" from the VIM Defendants' operations. [*See e.g.,* DE 214-5 at 72, 125, 141, 207, and 354.] Many Class members expressed feelings of being "prisoners in [their] own home," not being able to have cookouts, work in the garden, talk to their neighbors, or engage in any of the other types of outdoor activities that ordinarily make the suburban lifestyle so attractive. [*See e.g.,* DE 214-5 at. 81, 131, 162, 177, 184, 185, and 200.]

Complaints such as having "to keep all of the windows and doors closed tight in an effort to escape the rancid smells and filth," not being able to invite family and friends due to the "unbearable" smell, and having guests leave abruptly due to horrific odors were made by many Class members. [*See e.g.,* DE 214-5 at 101, 278, 307 and 378.] So terrible were the conditions that some Class members had to leave their homes for weeks at a time. [DE 214-5 at 200.] Others attempted to sell, but could not find a buyer or owed more on their home than it was worth. [DE 214-5 at. 79, 352.]

Class members reported being awakened in the middle of the night by a smell that was so strong it would make them nauseous. [DE 214-5 at 81, 413.]. Some characterized this odor as a "noxious stench," smelling like "rotten human flesh" or "rotten eggs and raw sewage" making living conditions "unbearable." [*See e.g.,* DE 214-5 at 315, 352, 378, and 412.]. Class members described experiencing physical discomfort in myriad forms, including coughs, nosebleeds, sinus problems and related headaches, unusual rashes, aggravated allergy and asthma symptoms, bronchitis and difficulty breathing upon exposure to smoke and odors from the VIM facility [*See e.g.,* DE 214-5 at

102, 133, 185, 244 and 354] -- symptoms that would disappear or become much milder when they left the Class Area. [*See e.g.,* DE 214-5 at 28, 89, 104, 150 and 162.]

In addition to the direct physical discomfort, many Class Members reported feeling anxious, fearful and worried about long-term health effects and whether it was safe for their children to play outdoors. [*See e.g.,* DE 214-5 at 162, 285.] Some expressed feelings of sadness, loss and isolation because family and friends would no longer visit due to the constant invasion of smoke and odors. [DE 214-5 at 27, 378, 354.]. Finally, the massive fire that occurred at the VIM Defendants' facility in 2007 left many Class members with lasting fear that another such fire would break out and engulf their homes. [*See e.g.,* DE 214-5 at 19, 185.]

Plaintiffs' also submitted photographic evidence of a massive explosion and fire that occurred at the VIM facility in 2007. These photographs taken by the Indiana State Fire Marshal clearly show large plumes of thick, black smoke from the VIM Defendants' facility engulfing the Class Area. [DE 214-8.]

The sworn testimony of Plaintiffs' expert, Dr. Mark Chernaik, provides additional evidence of Plaintiffs' nuisance damages. [DE 68-6.]. Dr. Chernaik, who earned his Ph.D in Biochemistry from John Hopkins University School of Public Health, rendered opinions in this case on the dispersion of pollutant plumes and human health effects of exposures to contaminants from the VIM facility. [DE 68-6, ¶1.]

According to Dr. Chernaik, during the time the VIM Defendants owned and operated the waste facility, persons living within the Class Area were "exposed to

harmful and obnoxious air pollutants dispersed from the facility." [DE 68-6, ¶3.] Furthermore, Dr. Chernaik determined that Class members had all been likely exposed to similar, harmful and obnoxious levels of pollutants from the VIM defendants' operations including: 1) smoke containing oxygenated VOCs from the chronic, persistent smoldering combustion of waste, sporadic waste pile fires, and manipulation of waste using heavy equipment; 2) particulate matter from the outdoor grinding of waste; 3) hydrogen sulfide from stagnant pools of wastewater that has contacted waste; and 4) odorous VOCs from the decomposition of waste at the facility. [DE 68-6, ¶3(b).] Finally, Dr. Chernaik confirmed that Class members' complaints of "extreme noxious odors, including the smell of rotten eggs, emanating from the VIM facility" were "consistent with" exposure to these harmful pollutants. [DE 68-6(f).]

All the evidence supports with reasonable certainty that Plaintiffs and Class Members suffered a loss of use and enjoyment of their properties and experienced personal discomfort and inconvenience due to the VIM Defendants' conduct such that a damages award for nuisance is appropriate. Assessing the appropriate amount of damages to award, I find the Survey of Jury Verdicts and Settlements submitted by Plaintiffs [DE 214-9] to be instructive. Plaintiffs have presented information on 19 cases presenting at least roughly similar scenarios of loss of use and enjoyment of property. The cases surveyed present a median award of $14,330 per plaintiff per year and an arithmetic mean of $29,064 per plaintiff per year.

In *Stickdorn v. Zook*, 89D02-0911-CT-024 (Ind.Sup.Ct. 2012), plaintiffs' counsel represented Indiana homeowners who sued for nuisance because their family farm was pervaded by noxious odors from the adjacent animal feeding operation. The plaintiffs obtained a default judgment in Wayne Superior Court representing $75,000 per year in damages for nuisance. In a Georgia case, a jury verdict of approximately $28,200 per year was awarded to a household for the defendant contractor's nuisance including dust, noise, vibrations and pollution of water lines. *Seabolt v. Gary's Grading & Pipeline Co.*, 2011 WL 7003720 (Ga.Super. 2011). In a Maryland case, the defendant's underground gasoline storage tank leaked a carcinogenic contaminant into the plaintiffs' groundwater, and the verdict awarded each of 4 affected households approximately $17,000 per year. *Keffer v. S.H. Tevis & Son Inc.*, 2010 WL 2681884 (Md.Cir.Ct. 2010). In 2009, plaintiffs in Missouri were awarded $5,000 per year for nuisance due to a neighboring cement business's noise, dust and deposits of sludge on their property. *McGinnis v. Northland Ready-Mix*, 2009 WL 4755876 (Mo.Cir. 2009). The more than $8 million dollar settlement of an Indiana case against Kraft Food represented approximately $40,000 per year per household for a factory's release of carcinogens that contaminated nearby homes. *Stoll, et al. v. Kraft Foods Global Inc.*, 2011 WL 2356950 (S.D.Ind. 2011).

Considered in comparison with these resolutions reached in comparable cases, the breakdown of damages suggested by Plaintiffs of $15,000 per year, for each year of nuisance harm suffered by each named Plaintiff and each Class member who was

12

initially named as a Plaintiff, is fair and reasonable. And, for Class members who did not answer discovery or otherwise distinguish the damages they suffered from the Class as a whole, an award of $5,000 per person, per year of nuisance harm suffered is also fair and reasonable.

Plaintiffs correctly suggest that damages be calculated for the period from October 28, 2003 (per the class definition) through July 25, 2011, when the facility was sold to the Soils defendants. This period is 7 years and 9 months. Plaintiffs' proposed damages, however, were originally calculated on the basis of 8 full years (*e.g.*, for the 6 named plaintiffs at $15,000 per year, the proposed default judgment seeks damages of $720,000). Plaintiffs' recent Motion to Correct Error acknowledges and addresses this and one other mistake in the proposed default judgment. The second error corrected concerns the previous double-counting of the 6 named plaintiffs, who were also included in the 140 original plaintiffs. The motion will be granted and the computation of damages will reflect these corrected figures.[3]

I am persuaded by the Plaintiffs' supplemental briefing that, with these fixed amounts of damages per category of already-identified Class member, no formal claims process is required. *Newberg on Class Actions* §12:18 (5th ed. updated Sept. 2015).

---

[3] I am also mindful that each class member will not necessarily have lived in the class area for the entire 7-year-and-270-day period. My computation of damages may therefore be thought to over-compensate some class members. In recognition of this possibility, I am basing the computation at rates on what I consider to be the lower end of the range of reasonableness for the nuisance suffered. I also note that although VIM Recycling and K.C. Industries were served with the motion for default judgment, they have not objected to what the Class has requested, on this point or any other.

Plaintiffs seem to have come to the conclusion that the judgment being entered via this order will be, in many respects, a pyrrhic victory. The VIM Defendant appear to be judgment-proof. Indeed, as the Plaintiffs have noted, "there is a real concern in this case that the defaulted Defendants' assets will be insufficient to satisfy the judgment." [DE 220 at 3.] Because of this, I approve the suggestion that any recovery on the judgment can be "distributed on a *pro rata* basis among the Class." [*Id.* at 4.] Also as Plaintiffs suggest [*id.*], if any recovery would result in a merely trivial *pro rata* distribution to each Class member, Plaintiffs can petition the court for approval of a *cy pres* charitable distribution.

IV. **Liability for Litigation Costs under RCRA (Count I)**

    A. **Citizen Suit Liability**

The admitted facts also establish the VIM Defendants' liability under RCRA's citizen suit provision, as pled in Count I. The statute authorizes injunctive relief to restrain "any person...who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. §6972(a)(1)(B). The relief Plaintiffs seek under Count I in the default judgment is the "costs of litigation (including reasonable attorney and expert witness fees)" as provided in §6972(e). Plaintiffs' motion for an award of fees and expenses is treated in a separate order also entered today, but the VIM Defendants' liability under RCRA is discussed here.

The elements of a claim under this statute are: "(1) that the defendant is a person, including but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment." Cox v. City of Dallas, 256 F.3d 281, 292 (5th Cir. 2001).

The first two elements are clearly established. The third element is met by the wood waste's emissions of VOCs, PM and wood dust, and the fire risk posed by smoldering combustion in the facility's waste piles. [DE 152, ¶¶40-45.] The facts established by Plaintiffs' proof and the admitted allegations here prove the VIM Defendants' violation of §6972(a)(1)(B).

**B. Defendant Will's Individual Liability**

Plaintiffs seek default judgment against the individual defendant Kenneth Will only on the RCRA claim in Count I, and so only for the attorney's fees and costs recoverable under that claim. [DE 214-1 at 4, DE 220 at 12.] Individuals are "persons" within the meaning of the RCRA provision governing Count I. *See* 42 U.S.C. §6903(15). The definition "includes both individuals and corporations and does not exclude corporate officers and employees." *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 745 (8th Cir. 1986) ("*NEPACCO*").

Judges on this court have been persuaded to follow *NEPACCO* holding that a corporate officer may be held personally liable under RCRA "as long as he was actively involved in the alleged violative activity." *United States v. Conservation Chemical Company of Illinois*, 733 F.Supp. 1215, 1221 (N.D.Ind. 1989) (Moody, J.). *See also United States v. Environmental Waste Control, Inc.*, 698 F.Supp. 1422, 1429 (N.D.Ind. 1988) (Miller, J.). Individual liability under this kind of standard is consistent "with Congress' intent to impose liability upon the persons who are involved in the handling and disposal of hazardous substances." *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 745 (8th Cir. 1986) ("*NEPACCO*"). Individual liability for personal participation in conduct violating the statute "is distinct from the derivative liability that results from 'piercing the corporate veil.'" *Id.* at 744.

The Seventh Circuit has observed that despite general principles under which "shareholders, directors and officers of a corporation are not liable for the obligations or delicts of the corporation," personal liability of corporate officers and directors is possible under CERCLA if the individuals "'themselves actually participate in the wrongful conduct prohibited by the Act.'" *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 420 (7th Cir. 1994), quoting *Riverside Mkt. Dev. Corp. v. International Bldg. Prods, Inc.*, 931 F.2d 327, 330 (5th Cir. 1991). *See also Browning-Ferris Industries of Illinois, Inc. v. Ter Maat*, 195 F.3d 953, 955-56 (7th Cir. 1999). "Our analysis of the scope of individual liability under the RCRA is similar to our analysis of the scope of individual liability under CERCLA." *NEPACCO,* 810 F.2d at 745.

In the related CERCLA context, courts have noted that "Congress, by including a liability category in addition to owner ('operator')...implied that a person who is an operator of a facility is not protected from liability by the legal structure of ownership." *United States v. Kayser-Roth Corp.*, 910 F.2d 24, 26 (1st Cir. 1990). CERCLA §107(a)(4) "plainly imposes liability on corporate officers and shareholders if they participate in the liability-creating conduct." *United States v. USX Corporation*, 68 F.3d 811, 822 (3rd Cir. 1995). "Actual control" of a corporation's day-to-day activities has also been found to be a basis for personal liability under 107(a)(1) and (a)(2) of CERCLA, applicable to "owners" and "operators" of hazardous waste facilities. *Lansford-Coaldale Joint Water Authority v. Tonolli Corp.*, 4 F.3d 1209-1220-21 (3rd Cir. 1993).

In addition to corporate roles as president, chairman of the board of directors, and principal shareholder, courts have looked to facts such as the individual's design of treatment process for hazardous materials, presence at the waste-processing facility, direction or control of the facility management and operations, responsibility for environmental compliance and, of course, direct personal control of the handling, transportation and disposal of hazardous substances. *Sidney S. Arst Co.*, 25 F.3d at 421; *NEPACCO*, 810 F.2d at 744; *Conservation Chemical*, 733 F.Supp. at 1222. In this case, because Will was "personally involved in or directly responsible for corporate acts in violation of RCRA," he can be held individually liable. *NEPACCO*, 810 F.2d at 745.

The individual liability of Defendant Will is predicated on his role, now admitted, as the President/Principal of VIM and Principal/Member of KC Industries

who "created and operated" the Elkhart "open dump and processing facility," and "[from 2000 until July 25, 2011,…was responsible for the overall and day-to-day operations, management and control of the Facility and Site including but not limited to outdoor storage, handling, grinding, processing, transporting and disposal of solid waste materials." [DE 152, ¶14.] Given his role in the daily operations of the facility, Defendant Will bears individual liability along with the entity Defendants. *K.C.1986 Ltd. Partnership v. Reade Mfg.*, 472 F.3d 1009, 1020 (8th Cir. 2007) (individual's liability is based on the authority to control the handling and disposal of hazardous substances). Default judgment can be entered against all three VIM defendants on Count I.

Although in default, Will appeared at the hearing on the present motions and has submitted two written filings in connection with the default judgment proceedings. First, he brought with him to the hearing on April 16 his personal affidavit. Later, I permitted him to file a memorandum in response to the Plaintiffs' supplemental post-hearing memorandum. Will's Affidavit [DE 217] and its exhibits address the assets and financial condition of the three Defendants in default. Although it may be of interest to the Plaintiffs in connection with their ability to collect on the default judgment, the Affidavit presents no information or argument pertinent to my ruling on the motion for default judgment. And Will, not being a licensed attorney properly admitted to practice and appearing on behalf of the entity defendants, cannot function as a representative here for VIM Recycling or KC Industries.

Will's memorandum in response to the Plaintiffs' supplemental brief [DE 221] is similarly unable to stave off default judgment. The memorandum essentially argues against any determination that the Site presents or may present an imminent and substantial endangerment to health and the environment. By his default in the case, Will has forfeited the right to dispute those facts and that conclusion: "Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief." Wright, Miller & Kane, *10A Federal Practice and Procedure Civil 3d* §2688 (3d ed.). By failing to plead in response to the Second Amended Complaint, Will in effect admitted its allegations other than those relating to the amount of damages. *See* Fed.R.Civ.P. 8(b)(6).

To the extent anything in Will's personal appearance for the hearing or his filings could be construed (very generously) as a request to set aside his default, I am not persuaded that there is any good cause shown to do so under Fed.R.Civ.P. 55(c). The arguments Will now presents fail to disturb my conclusion that the facts deemed admitted by the default, further supported by the supplemental proof offered by Plaintiffs, establish liability for nuisance under Indiana law and for the VIM Defendants' violations of §6972.

**ACCORDINGLY:**

Plaintiffs' Motion to Correct Error [DE 225] is GRANTED.

Plaintiffs' Motion for Default Judgment against the VIM Defendants [DE 214] is hereby GRANTED as to Counts I and III of the Second Amended Class Action Complaint.

The Clerk shall enter default judgment in favor of Plaintiffs and Class Members and against defendants VIM Recycling, Inc. and K.C. Industries, LLC, jointly and severally, in the amount of $50,568,750.00, based on the following distribution:

| Class Member | Award | Subtotal (Oct. 28, 2003 - July 25, 2011) |
|---|---|---|
| Named Plaintiffs (6) | $15,000/year/plaintiff | $ 697,500 |
| Class Members Who Initiated Lawsuit (134) | $15,000/year/class member | $ 15,577,500 |
| Remaining Class Members (885) | $5,000/year/class member | $ 34,293,750 |
| **TOTAL:** | | **$ 50,568,750** |

Under 28 U.S.C. §1961, VIM Recycling and K.C. Industries are ordered to pay post-judgment interest on the damages award from the date of the Judgment until it is paid in full.

All remaining counts are dismissed and this matter is to be CLOSED with the entry of the default judgment.

**SO ORDERED.**

ENTERED this 24th day of November, 2015.

                                        /s/ Philip P. Simon  
                                        PHILIP P. SIMON, CHIEF JUDGE  
                                        UNITED STATES DISTRICT COURT