UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CARMINE GREENE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) |
| KENNETH R. WILL, et al., | ) CASE NO.: 3:09-CV-00510-PPS-MGG |
| Defendants, | ) |
| and | ) |
| WESTFIELD INSURANCE COMPANY, | ) |
| Garnishee Defendant. | ) |

**PLAINTIFFS' SURREPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST WESTFIELD INSURANCE COMPANY**

**I.     Neither *Estep* nor *Rose* Establishes That Judgment Creditors May Not Raise Insurers' Breach of Their Duty to Defend in Proceedings Supplemental.**

As Plaintiffs noted in both their initial and reply briefs, Indiana cases hold that in a proceeding supplemental, a judgment creditor may raise the failure of the judgment debtor's insurer to defend its insured against the underlying action as grounds to estop the insurer from asserting policy defenses to avoid indemnifying the judgment against the insured.  *See Motorists Mutual Ins. Co. v. Johnson*, 139 Ind.App. 622, 632, 218 N.E.2d 712, 717-18 (1966); *American Family Mutual Ins. Co. v. Kivela*, 408 N.E.2d 805, 813 (Ind. Ct. App. 1980; *Smithers v. Mettert*, 513 N.E.2d 660, 664 (Ind. Ct. App. 1987).  As the *Johnson* court explained, once an injured plaintiff has obtained a judgment against an insured defendant, "the injured person is in the legal shoes of the insured," so that "if an insurer is estopped to assert a certain defense to an action by

the insured, estoppel precludes use of such defense against the injured person." *Johnson*, 218 N.E.2d at 715.

Westfield insists, however, both in its opposition brief and its sur-response, that Plaintiffs may not raise Westfield's wrongful failure to defend the VIM Defendants against this action as part of this proceeding supplemental.  It says that in *State Farm Mutual Auto. Ins. Co. v. Estep*, 873 N.E.2d 1021 (Ind. 2007), and *Rose v. Mercantile National Bank of Hammond,* 868 N.E.2d 772 (Ind. 2007), the Indiana Supreme Court overruled *Johnson*, *Kivela*, and *Smithers*, albeit without mentioning them.  According to Westfield, *Estep* and *Rose* each established that a judgment creditor may not bring an original, independent cause of action against a garnishee defendant in a proceeding supplemental.  And because, again according to Westfield, an assertion by a judgment creditor that the judgment debtor's insurer wrongfully failed to defend the insured against the underlying complaint is an original, independent cause of action, it means a judgment creditor may not raise such an assertion in a proceeding supplemental.  (Sur-Response at 3-4.)

What *Estep* in fact said was that a bad-faith claim against the judgment debtor's insurer, which the judgment debtor had assigned to the judgment creditor at the trial court's direction, was properly brought as a separate lawsuit rather than as part of the proceeding supplemental against the judgment debtor.  This was the entirety of the majority opinion's discussion of that subject:

> Since a proceeding supplemental is merely an extension of the underlying action, the merits of any assigned claim should not be tried in this limited forum.  *See First Bank of Whiting v. Sisters of Mercy Health Corp*., 545 N.E.2d 1134, 1141 (Ind. Ct. App. 1989) (proceeding supplemental not appropriate forum to try a judgment creditor's cause of action against a garnishee-defendant); *Protective Ins. Co. v. Steuber*, 175 Ind.App. 139, 370 N.E.2d 406 (1977) (garnishee entitled to change of venue where trial likely).

*Estep*, 873 N.E.2d at 1023 n.4.

In a concurring and dissenting opinion joined in by one other justice, Justice Boehm elaborated on that brief comment by the majority. He explained that the principal purpose of a proceeding supplemental is to identify assets that are within the judgment debtor's control and thus subject to attachment to satisfy a judgment. *Estep*, 873 N.E.2d at 1029 (Boehm, J., concurring and dissenting). But, he continued, when the judgment debtor has assigned a claim to someone else, it is no longer his property and thus no longer capable of attachment in a proceeding supplemental. *Id.* Hence in his view, the procedural rules and statutes that authorize a judgment creditor to enforce an obligation owed to the judgment debtor in a proceeding supplemental do not also authorize a judgment creditor to assert a claim that has been assigned to him by the judgment debtor. *Id.*

Nothing about either the *Estep* majority's passing comment that the merits of an assigned claim should not be tried in a proceeding supplemental or the concurring opinion's explanation why that is so is relevant here. Certainly *Estep* cannot possibly be read as overruling *sub silento* cases which hold that a judgment creditor may raise in a proceeding supplemental the wrongful failure of the judgment debtor's insurer to defend its insured as grounds to estop it from asserting policy defenses.

*Rose*, on the other hand, *is* relevant to this case and illustrates clearly why Westfield's position is wrong. In *Rose*, the plaintiff bank obtained a judgment against defendant Jasper-Newton Utility Company for its breach of a contract to provide utility service to property owned by the plaintiff. *Rose*, 868 N.E.2d at 773. After the judgment was entered, Jasper-Newton sold all of its assets to another utility and distributed the proceeds to its two shareholders, Rose and Underwood. *Id*. at 774. The plaintiff then initiated a proceeding supplemental against the shareholders, seeking recovery from them under two theories. First, the plaintiff claimed the

shareholders were liable for the judgment against Jasper-Newton because they had participated in a fraudulent transfer of its assets. *Id*. Second, it claimed the shareholders' conduct constituted criminal fraud, subjecting them to liability under Indiana's Crime Victims' Compensation Act for damages in an amount three times the judgment plus attorney fees. *Id.*

The Indiana Supreme Court held that the plaintiff's contention that Rose and Underwood participated in a fraudulent transfer could be litigated in the proceeding supplemental because it was not an *independent* cause of action. That is, it was not a cause of action independent from the collection of the existing judgment. *Id*. at 776. Rather, the court said, the "sole purpose" of the plaintiff's fraudulent-transfer claim was "the removal of obstacles which prevent the enforcement of the judgment," and with its only effect being "to subject the property to execution as though it were still in the name of the grantor." *Id*. (quoting *Beavans v. Goff,* 211 Ind. 85, 90, 5 N.E.2d 514, 516 (1937)).

But, the court said, the same was not true of the plaintiff's Crime Victims' Compensation Act claim: "Unlike the fraudulent transfer claims, Mercantile's attempt to seek new damages from Rose and Underwood by adding a Crime Victims' claim does not fit the purpose for proceedings supplemental." *Id.* at 777. Such a claim, the court said, would not constitute an effort "to enforce and collect [an] existing judgment[ ]," but rather to establish a new one in an amount potentially in excess of the existing judgment. *Id*. As a result, the court held that claim must be brought as a separate lawsuit. *Id.*

Here Plaintiffs' contention that Westfield wrongfully failed to defend its insureds is directly analogous to the fraudulent-transfer claim in *Rose*. The sole purpose of that contention is to enable Plaintiffs to enforce and collect an existing judgment by removing obstacles (Westfield's policy defenses) that could hinder or prevent such enforcement and collection. And unlike the

situation of the bank's Crime Victims' claim in *Rose*, Plaintiffs do not seek any damages at all for Westfield's breach of its duty to defend, let alone "new damages" that could exceed the amount of the judgment they seek to enforce.  The only remedy Plaintiffs seek for that breach is to estop Westfield from raising policy defenses to oppose garnishment of the proceeds of the policies.  That remedy is in no way "independent" of the garnishment claim presented in this proceeding supplemental.  It is an integral part of that claim, which even Westfield concedes may go forward in this proceeding supplemental, and would be meaningless as a remedy for a stand-alone claim based on Westfield's breach of its duty to defend.  That is in contrast not only to the remedy available for the stand-alone Crime Victims' claim in *Rose* but also to the remedies available for the stand-alone bad-faith claim in *Estep* and the stand-alone breach-of-fiduciary-duty claim in *First Bank of Whiting*, the case cited in the *Estep* majority's footnote.

In sum, neither *Estep* nor *Rose* establishes that Plaintiffs may not raise Westfield's breach of its duty to defend in this proceeding supplemental.  On the contrary, *Rose* clearly supports their ability to raise that contention here, and thus is consistent with J*ohnson*, *Kivela*, and *Smithers*.

II.     **No Other Authority Supports Westfield's Contention That the Breach of Its Duty to Defend May Not Be Raised in This Proceeding**.

Besides claiming that *Estep* and *Rose* establish that Plaintiffs may not raise the breach of its duty to defend in this proceeding supplemental, Westfield's sur-response includes five additional arguments in support of that contention.  Those arguments are set forth below along with explanations why each is wrong.

First, Westfield says that because it is entitled to a jury trial on any claim by Plaintiffs that it breached its duty to defend, and because jury trials are not afforded in proceedings supplemental (citing *Hermitage Ins. Co. v. Salts*, 698 N.E.2d 856, 858 (Ind. Ct. App. 1998), for the latter contention), it must mean that Plaintiffs may not assert in this proceeding supplemental that

Westfield breached its duty to defend. (Sur-Response at 5.) However, Westfield *was* entitled to a jury trial on all disputed factual issues in this proceeding supplemental. *See Rose*, 868 N.E.2d at 776 ("While juries are disfavored in proceedings supplemental for their tendency to prolong matters, where the pleadings form issues of fact that a jury could reasonably decide, the parties may demand a jury trial."). Westfield waived that right by not demanding a jury in its answer (DE 255) or within 14 days thereafter. *See* Fed. R. Civ. P. 38(d). And even if Westfield had demanded a jury, it has identified no disputed factual issues that would prevent the Court from determining as a matter of law that its duty to defend was both triggered and breached.

Second, Westfield says that in *Ferraro v. Humphrey*, 242 F. Supp. 3d 732 (N.D. Ind. 2017), the court held that it "could not decline jurisdiction over [an] insurance coverage declaratory judgment action under [the] *Wilton-Brillhart* abstention doctrine based on [the] existence of parallel proceedings supplemental, because, under *Estep,* proceedings supplemental were not a proper forum for litigating [the] original coverage issues raised in the declaratory judgment action." (Sur-Response at 4 n.2.) In fact, the court said nothing of the kind.

In *Ferraro*, the plaintiff tort victim, Ferraro, sued the tortfeasor, Humphrey, and his employer, ANSC, but never served ANSC or otherwise notified it of the action. *Ferraro*, 242 F. Supp. 3d at 736. After obtaining a default judgment against Humphrey, Ferraro initiated a proceeding supplemental against ANSC's parent company, Masco, on the theory that it held proceeds of liability insurance on Humphrey's behalf. *Id*. at 737. Ferraro's motion for summary judgment against Masco was denied, and the Indiana Court of Appeals declined to accept his appeal of that order. *Id.* Ferraro then filed a new action, removed to federal court, seeking a declaratory judgment that ANSC, Masco, and its insurer were each obligated to indemnify his judgment against Humphrey. *Id.* Those defendants all moved for summary judgment against

Ferraro. *Id*. at 737-38. In response to the summary judgment motions, Ferraro moved the court to abstain from proceeding further in the action *he* had filed, arguing that the state-court proceeding supplemental involved the same issues as that action. *Id*. at 741.  The court declined to abstain only because the state court had already ruled against Ferraro on his attempt to obtain indemnity for his judgment against Humphrey:

> Only after the Lake County Superior Court denied the Plaintiff's motion for summary judgment seeking to attach Humphrey's default judgment liability to Masco, and after the Plaintiff's failed interlocutory appeal, did the Plaintiff seek to file a new suit in state court that was removed to this Court.  Accordingly, the state court suit is not a parallel proceeding as asserted by the Plaintiff.

*Id*. at 742.  The court did *not* say or remotely suggest that a proceeding supplemental is not a proper forum for litigating original coverage issues.

Third, Westfield says that *Wolverine Mutual Ins. Co. v. Vance*, 325 F.3d 939 (7th Cir. 2003), "confirms that injured parties, like Plaintiffs here, do not 'stand in the shoes' of the insured with respect to whether an insurer had a duty to defend" (Sur-Response at 8), and that "the Seventh Circuit recognized in *Wolverine* that an injured third-party's standing to challenge an insurer's duty to defend differs from that of the insured."  (*Id*. at 9.)  Once again Westfield has materially misstated what was said in that case.

In *Wolverine*, the insured defendant, Gingery, shot Vance, who along with his wife and children sued Gingery for his injuries. *Wolverine*, 325 F.3d at 941.  While that action was pending, Gingery's insurer filed a separate declaratory judgment action to establish the absence of coverage for the plaintiffs' claims. *Id*. at 942.  The insurer's motion for summary judgment was granted and the plaintiffs appealed. *Id.*  In affirming the grant of summary judgment, the Seventh Circuit noted that the plaintiffs could not challenge the district court's ruling that the insurer was not obligated to defend Gingery, but only because there was no possible relief they could obtain from such a

challenge. As the court put it, "Because the plaintiffs cannot show how they will gain by providing Gingery with a better defense at his civil trial, they have no standing to appeal the district court's decision that Wolverine does not owe Gingery a duty to defend in their civil action." *Id*. at 942 n.2.

Here Plaintiffs are not challenging a ruling that Westfield is not obligated to defend its insureds against a *pending* action they have filed. Rather they are claiming Westfield wrongfully failed to defend its insureds against an action that *concluded* after such defense was denied, and as a result is estopped from raising policy defenses to avoid indemnifying the judgment that its undefended insureds suffered. Thus unlike in *Wolverine*, there *is* relief that can be provided to Plaintiffs upon their showing that Westfield breached its duty to defend its insureds. Nothing in *Wolverine* suggests that judgment creditors like Plaintiffs do not stand in the legal shoes of an insured judgment debtor for purposes of determining whether the judgment debtor's insurer wrongfully failed to defend it against the underlying action.

Fourth, Westfield says that *Smithers* v. *Mettert*, 513 N.E.2d 660 (Ind. Ct. App. 1987), does not support Plaintiffs' position that a judgment creditor may raise an insurer's wrongful failure to have defended the judgment debtor in the underlying action. That is so, Westfield says, because *Smithers* is distinguishable from this case in two respects. First, it says, in *Smithers* the insured judgment debtor's right to coverage was "self-evident" from the judgment against him. (Sur-Reponse at 8.) But here it was not self-evident from the default judgment against the VIM Defendants that they were entitled to coverage, and hence it is not self-evident that Westfield's failure to defend the VIM Defendants against this action was wrongful. (*Id.*)

This argument is nonsensical. Whether Westfield had a duty to defend the VIM Defendants against this action has nothing to do with the *judgment* against them. It depends solely on whether

the allegations in Plaintiffs' *complaint* against them were *potentially* within the indemnity coverage of Westfield's policies. *See Property-Owners Ins. Co. v. Virk Boyz Liquor Stores, LLC*, 219 F. Supp. 3d 868, 873 (N.D. Ind. 2016). Because Plaintiffs' complaint alleged facts that *might* fall within the coverage of the policies, Westfield's duty to defend was triggered. And because it failed to perform that duty, it breached it. Nothing about that differs from the situation presented in *Smithers*.

Second, Westfield says the defense which the insurer in *Smithers* was estopped from asserting—that the default judgment against the insured was not entered "after actual trial" as the policy required—was based on conduct the insurer induced by its wrongful denial of coverage. But here, Westfield says, its policy defenses are not based on conduct of the VIM Defendants that its denial of coverage induced. (Sur-Response at 8-9.)

This is the exact argument the insurer made in *Federal Ins. Co. v. Stroh Brewery Co.*, 35 F. Supp. 2d 650 (N.D. Ind. 1998), in an attempt to distinguish *Kivela* and *Indiana Ins. Co. v. Ivetich*, 445 N.E.2d 110 (Ind. Ct. App. 1983), cases the Seventh Circuit cited in finding that the insurer's wrongful failure to defend its insured estopped it from raising policy defenses to oppose the claim for indemnity. *See Stroh*, 35 F. Supp. 2d at 655. The *Stroh* court rejected that argument, stating:

> In *Kivela* and *Ivetich*, Indiana courts decided that an insurance company may be estopped from using contractual defenses based upon conduct of the insured when the insurer itself induced such conduct by a wrongful denial of coverage. However, these cases do not limit the application of estoppel to those defenses which an insurer's wrongful denial of coverage may create. . . . On the contrary, *Protective* [*Ins. Co. v. Coca-Cola Bottling Co*., 423 N.E.2d 656 (Ind. Ct. App. 1981)] indicates, "The doctrine[ ] of . . .estoppel extend[s] to practically every ground upon which an insurer may deny liability."

*Id.* at 655-56 (some alternation in original). Westfield's assertion of the identical argument here in an attempt to distinguish *Smithers* should be rejected for the same reason.

Fifth, Westfield says the district court's decision in *Stroh* has no bearing on whether a judgment creditor may raise an insurer's breach of its duty to defend the judgment debtor in order to estop it from asserting policy defenses because *Stroh* involved a coverage dispute between an insurer and its own insured. (Sur-Response at 9.) This is the same argument Westfield made in its opposition brief in an attempt to distinguish the Seventh Circuit's decision in *Stroh*, as well as the decisions in *Ivetich* and *Employers Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015 (Ind. Ct. App. 1999). (*See* Opposition Br. at 21.)

As Plaintiffs explained when Westfield made this argument the first time, even though a judgment creditor will never have relied to its detriment on an insurer's wrongful failure to defend the tortfeasor whom the judgment creditor sued, it may raise the insurer's breach of its duty to defend to estop it from asserting policy defenses because the judgment creditor's rights against *any* third party who owes an obligation to the judgment debtor are derivative of the judgment debtor's own rights against that third party. *See* Ind. Tr. R. 69(E) (judgment creditor may garnish "an[y] obligation owing to the judgment debtor"); *Johnson,* 218 N.E.2d at 715 ("if an insurer is estopped to assert a certain defense to an action by the insured, estoppel precludes use of such defense against the injured person"). Therefore, *Stroh, Ivetich, and Recticel Foam* all support Plaintiffs' ability to raise Westfield's wrongful failure to defend its insureds as grounds to estop it from asserting policy defenses to oppose Plaintiffs' garnishment claim.

### III. Westfield Has Not Disputed and Cannot Dispute That Its Duty to Defend Was Both Triggered and Breached.

Plaintiffs explained in their initial brief that under Indiana law, "[a]n insurer's duty to defend is determined by comparing the underlying factual allegations of the complaint with the relevant provisions of the insurance policy," and that "[a] duty to defend is triggered when the underlying complaint alleges facts that might fall within the coverage of the policy." *National*

*Union Fire Ins. Co. of Pittsburg, PA v. Mead Johnson & Co.,* 913 F. Supp. 2d 682, 685 (S.D. Ind. 2012), *aff'd*, 735 F.3d 539 (7th Cir. 2013).  Plaintiffs also quoted allegations from their complaint against the VIM Defendants showing bodily injuries and property damage claimed to have been suffered by Plaintiffs as a result of accidents and other occurrences attributable to the VIM Defendants that took place in the coverage territory during the effective dates of Westfield's policies.  They concluded that because those allegations, if proved true, would satisfy the facial requirements for indemnity under Westfield's policies, they triggered Westfield's duty to defend, a duty it did not perform.

      Westfield did not dispute any of that in its opposition brief.  That is, it did not dispute that Plaintiffs had correctly described the standard for determining whether an insurer's duty to defend is triggered.  Nor did it dispute that Plaintiffs had correctly identified the elements of facial coverage under its polices.  Nor did it dispute that the allegations quoted by Plaintiffs set forth facts that, if proved true, would satisfy those elements.  Yet Westfield now insists Plaintiffs have erroneously stated that Westfield does not dispute that its duty to defend the VIM Defendants against this action was triggered.  It calls that statement "baffling," and says that "[n]othing could be further from the truth."  (Sur-Response at 13.)

      Westfield may not want to concede that its duty to defend its insureds against this action was triggered and breached.  But that desire is irrelevant without some argument to support it, and Westfield has presented none.  More importantly, however, because Plaintiffs' complaint against the VIM Defendants included allegations that were potentially within the indemnity coverage of Westfield's policies, Westfield's duty to defend was triggered as a matter of law.   And because Westfield did not perform that duty, it breached it, again as a matter of law.

**IV.     The Equities of This Case Do Not Excuse Westfield's Breach.**

As it did in its opposition brief, Westfield argues again that because its failure to defend its insureds resulted from its misunderstanding about the res judicata effect of the agreed judgment in the Declaratory Judgment Action, it would be inequitable for the Court to estop it from raising policy defenses to oppose Plaintiffs' garnishment claim.  It says cases in which insurers failed to defend their insureds due to their mistakes about the scope of their coverage but were still estopped from raising policy defenses are distinguishable, since a mistake about the scope of coverage is somehow different from a mistake about the preclusive effect of a judgment.  (Sur-Response at 13.)  And it says that to grant the relief Plaintiffs have requested would not just be "unjust" but "pernicious."  (*Id*. at 14.)

No Indiana court has ever engaged in a balancing of equities to determine whether an insurer who breached its duty to defend its insured is estopped from raising policy defenses to avoid indemnifying a judgment against the insured.  But even if this Court were to apply such an approach, nothing about the equities of this case favors Westfield over any of the other parties.  Plaintiff class members, 1,025 individuals, incurred damages in an amount the Court found to exceed $50 million.  Yet they have received no compensation at all for their injuries so far.  Their lawyers, members of a public-interest firm that litigated against Westfield's insureds for over six years and were awarded $273,339.85 for the success they achieved, likewise have received no compensation at all.  And  Westfield's insureds, who paid thousands of dollars for insurance that should have provided them with a defense against this action, eventually had to throw in the towel when they could no longer afford to defend themselves, with defendant Kenneth Will filing bankruptcy.[1]

---

[1] *See* Case No. 16-31178, United States Bankruptcy Court, Northern District of Indiana, South Bend Division, Chapter 7 Bankruptcy, Kenneth R. Will, Debtor.

A balancing of equities, even if it were appropriate, would favor Westfield least of any of those parties. It certainly would not warrant a departure from the principle applied by courts throughout the country that an insurer who wrongfully fails to defend its insured is estopped from raising policy defenses to avoid indemnifying a judgment against the insured.

**V.    Conclusion.**

Westfield's sur-response does nothing to refute the straightforward premise of Plaintiffs' motion: that Westfield's duty to defend its insureds against this action was triggered; that Westfield did not perform that duty; and that as a consequence it is estopped from raising policy defenses to oppose Plaintiffs' garnishment claim. Indeed, Westfield's latest brief serves only to highlight the vacantness of its position. Indiana law, as applied by Indiana courts, by this district court, and by the Seventh Circuit, fully supports Plaintiffs' request for relief. Their motion for partial summary judgment against Westfield should be granted

Respectfully Submitted,

/s/ Frank J. Deveau
Frank J. Deveau
R. C. Richmond, III
Donald C. Biggs
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Telephone: (317) 713-3500
Email:  fdeveau@taftlaw.com
        rrichmond@taftlaw.com
        dbiggs@taftlaw.com

Kim E. Ferraro
HOOSIER ENVIRONMENTAL COUNCIL
407 East Lincolnway, Suite A
Valparaiso, Indiana 46383
Telephone: (219) 464-0104
Email: kferraro@hecweb.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The foregoing was filed electronically with the Clerk of the Court through the ECF/CMF system on October 26, 2017, which sent notification of such filing to the following counsel of record.

Mark R. Smith
SMITH FISHER MAAS HOWARD & LLOYD, P.C.
7209 North Shadeland Avenue
Indianapolis, Indiana 46250
msmith@smithfisher.com

John J. Haggerty
FOX ROTHSCHILD LLP
2700 Kelly Road, Suite 300
Warrington, Pennsylvania 18976
jhaggerty@foxrothschild.com

A copy of the foregoing was also sent that day via first-class U.S. mail to:

Kenneth R. Will
22907 State Road 120
Elkhart, Indiana  46516

VIM Recycling, Inc.
c/o Kenneth R. Will
22907 State Road 120
Elkhart, Indiana  46516

K.C. Industries, LLC
c/o Kenneth R. Will
22907 State Road 120
Elkhart, Indiana  46516

/s/Donald C. Biggs
Donald C. Biggs