UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CARMINE GREENE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:09CV510-PPS |
| | ) | |
| KENNETH R. WILL, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| WESTFIELD INSURANCE COMPANY, | ) | |
| | ) | |
| Garnishee Defendant. | ) | |

## OPINION AND ORDER

This case is about environmental contamination by a wood waste processing facility in Elkhart, Indiana. The plaintiffs, a class of individuals who lived in the area neighboring the facility, hold a whopping default judgment against defendants VIM Recycling, Inc. and K.C. Industries, LLC jointly and severally for damages exceeding $50 million on a claim for nuisance. [DE 226 at 20, 228.] The Class also has a default judgment against those same defendants plus an individual defendant Kenneth Will jointly and severally under the federal Resource Conservation and Recovery Act for litigation costs of approximately $275,000. [DE 227 at 9, 228.] For simplicity sake I will refer to all defendants in this opinion as the "VIM Defendants."

In proceedings supplemental the Class is trying to execute on these two judgments based on commercial liability insurance policies issued to the VIM Defendants by Garnishee Defendant Westfield Insurance Company. [DE 235.] Now before me is the Class's motion for partial summary judgment, in which they seek a determination as a matter of law that Westfield had a duty to defend the VIM Defendants in this action, and that Westfield's breach of that duty equitably estops Westfield from raising policy defenses against the Class's claim for indemnification now. [DE 273 at 2.]

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Beyond the showing of undisputed material facts, in order to win, the summary judgment movant must demonstrate that on those facts "the law provides him with relief." *Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir. 1993).

**Undisputed Material Facts**

This case is a procedural tangle involving three separate lawsuits and an appeal of one of those cases. No one disputes the following facts most of which arise from the prior proceedings in this case and the two related cases. Here's what happened: Westfield issued a Commercial Insurance Coverage Policy to VIM and K.C. as the named insureds, with effective coverage dates from January 1, 2004 to January 1, 2005. The policy was renewed three times and thereby ultimately covered the period from January 1, 2004 to January 1, 2008. Kenneth Will was also an insured under the policy as an executive officer of VIM. The policy provided that Westfield "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," and that Westfield "will have the right and duty to defend the insured against any 'suit' seeking those damages." [DE 242-19 at 26.]

"Bodily injury" and "property damage" within the meaning of the policy must be caused by an "occurrence" within the coverage territory and during the policy period. The policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [*Id*. at 39.] The term "accident" was not otherwise defined in the policy. "Bodily injury" was defined in the policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." [*Id*. at 37.] "Property

3

damage" was defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property."  [*Id*. at 40.]

This lawsuit was filed on October 27, 2009, asserting claims under the Resource Conservation and Recovery Act and state common law, based on the VIM Defendants' operation of their wood waste recycling business.  I dismissed the complaint on April 21, 2010, and the plaintiffs appealed the dismissal to the Seventh Circuit.  Shortly thereafter, those plaintiffs plus 10 additional persons filed a state lawsuit against the VIM Defendants in Elkhart County Superior Court, from which the RCRA claims were omitted.  The VIM Defendants tendered the defense of the Elkhart suit to Westfield, which undertook the defense under reservation of rights, pending an investigation into coverage.  For whatever reason, it appears that VIM did not tender the defense of this lawsuit when they tendered the defense of the state court matter.

Westfield received notice of the Elkhart action on or about October 1, 2010.  At that time, as noted, this action was on appeal to the Seventh Circuit.  This was Westfield's first notice of VIM's history of issues with environmental regulators in the operation of its wood waste facility.  In a letter to the VIM Defendants dated February 4, 2011, counsel for Westfield expressed the conclusion that Westfield had no duty to defend or indemnify in connection with the Elkhart lawsuit, setting forth its bases for the denial of coverage and a number of defenses Westfield believed to be applicable.  Notwithstanding this letter, Westfield continued to defend the VIM Defendants in the Elkhart action under a reservation of rights.

4

Even as it continued to defend the VIM Defendants in the Elkhart case, Westfield filed an action in this court before Judge Joseph Van Bokkelen on April 18, 2011, seeking a declaratory judgment that it had no duty to defend or indemnify the VIM Defendants against the Elkhart action. In its complaint, Westfield acknowledged that it had also received the federal complaint from this case, as to which the appeal to the Seventh Circuit was still pending. The following month, on May 25, 2011, the Seventh Circuit reversed and remanded this case back to this court. But for reasons that are entirely unclear, it appears that Westfield made no effort to amend its complaint in the Judge Van Bokkelen case to add a request for a declaratory judgment of no duty to defend or indemnify *in this case*.

Ultimately, Westfield's declaratory judgment action before Judge Van Bokkelen ended with default judgments against the VIM Defendants on September 1, 2011, and an agreed judgment between Westfield and the Class members on October 25, 2011, both declaring that Westfield had no duty to defend or indemnify the VIM defendants in the Elkhart suit. To repeat, by that time, this case had been reanimated on the docket by virtue of the reversal in the Seventh Circuit. Given this fact, the absence of any reference to a duty to defend in the present case is especially notable. In any event, after the judgments in Judge Van Bokkelen's case, Westfield stopped defending the VIM Defendants in the Elkhart action.

After reversal of this case by the Seventh Circuit, the action resumed here in the district court. Counsel for the VIM Defendants withdrew, and no other counsel entered

5

an appearance in their place. The plaintiff Class was later certified. The default judgments against the VIM Defendants were entered in this action on November 24, 2015. It is unclear whether any of the VIM defendants or their prior lawyers thought to notify Westfield while all of this was going on.

Earlier in these proceedings supplemental, Westfield moved for summary judgment invoking res judicata based on the dispositions before Judge Van Bokkelen, but I determined that "the scope of Westfield's declaratory judgment action, and the Agreed Judgment there that disposed of its limited claim against the Class, do not support preclusive effect here against the Class's assertions of insurance coverage applicable to this action." [DE 270 at 14.]

## Discussion

The parties agree that Indiana law governs the issues raised in the summary judgment motion. [DE 274 at 6; DE 275 at 7, 21, 24.] Under Indiana law, "[i]n proceedings supplemental to recover from a liability insurer, the judgment creditor bears the burden of showing a judgment, the insurance policy, and facial coverage under the policy." *Gallant Ins. Co. v. Oswalt*, 762 N.E.2d 1254, 1258 (Ind.Ct.App. 2002). "Once the judgment creditor establishes this prima facie case, the liability insurer must go forward with evidence creating a genuine issue of fact." *Gallant Ins. Co. v. Allstate Ins. Co.*, 723 N.E.2d 452, 454-55 (Ind.Ct.App. 2000).

First, the Class cites the principle that an insurer's duty to defend its insured is broader than its duty to indemnify. *Allstate Insurance Company v. McColly Realtors, Inc.*,

6

\_\_ F.Supp.3d \_\_, 2017 WL 4938154 at *5 (N.D.Ind. 2017), citing *Newnam Mfg., Inc. v. Transcontinental Ins. Co.*, 871 N.E.2d 396, 401 (Ind.Ct.App. 2007). Indiana courts "determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation." *Newnam Mfg.*, 871 N.E.2d at 401. The Class contends that the complaint in this case "included allegations that, if proved true, fell squarely within the indemnity coverage provided by Westfield's policies." [DE 274 at 10.] After this attempt to establish that their claims supported a duty to defend the VIM defendants in this case, the Class argues that "Indiana courts have long held that an insurer that breaches its duty to defend its insured is equitably estopped from raising policy defenses when faced with a claim for indemnification of a judgment against the insured." [DE 274 at 13.] The Class suggests that as a judgment creditor, it stands in the shoes of the VIM Defendants and can invoke against Westfield the estoppel of defenses to coverage that the VIM Defendants would have as insureds. [DE 274 at 14-15.]

Westfield (unhelpfully) has not specifically addressed but "does not concede" the argument that it breached its duty to defend. [DE 275 at 29, n.9.] If the breach of the duty to defend were an issue of fact, Westfield's failure to directly dispute it would permit me to "consider the fact undisputed for purposes of the motion." Fed.R.Civ.P. 56(e)(2). But the posture is different concerning an issue of law. When seeking summary judgment, the Class has the burden to demonstrate that it is entitled to judgment as a matter of law. Even without argument to the contrary from Westfield, I

7

cannot grant summary judgment on the basis of an unopposed legal analysis that is faulty. This provides a segue to my misgivings about the Class's duty to defend analysis. Because they concern a threshold matter within the Class's argument, I do not address or analyze the later steps in the Class's reasoning as outlined above.

The Class has blurred a critical step in its duty to defend argument. As the Indiana Supreme Court has pointed out, "an insurer cannot defend a claim of which it has no knowledge." *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1273 (2009). As a result, "[t]he insurer's duty to defend simply does not arise until it receives the foundational information designated in the notice requirement," and "[u]ntil an insurer receives such enabling information, it cannot be held accountable for breaching this duty." *Id*. Because I have concerns that the Class's analysis skips these potentially essential steps, I am not persuaded that they have demonstrated an entitlement to judgment as a matter of law. My misgivings stem from the lack of facts and analysis in the present record concerning whether and when the VIM Defendants tendered this litigation to Westfield for a defense, and, if they never did, whether and when Westfield received constructive notice sufficient to trigger the duty to defend.

The Class points out that at least as of April 18, 2011, when Westfield filed its declaratory judgment action before Judge Van Bokkelen concerning the Elkhart suit, Westfield was aware of this separate litigation. That's true. But it is also true that, at that juncture, this case had been dismissed and was on appeal. [DE 274 at 5.] Westfield's answers to interrogatories indicate that "it first received notice of the matters giving rise

8

to this action on or about October 1, 2010, when the VIM Defendants notified Westfield of the State Court Action." [DE 274-1 at 6.] The complaint filed in the Elkhart action on May 24, 2010 referenced this lawsuit and the fact that it had been dismissed "for lack of federal supplemental jurisdiction without prejudice on April 22, 2010," with no reference to the pendency of the appeal. [DE 259-2 at 5.] On its face and without more, the state court complaint suggested that this federal case was finished, though it was not.

The Class merely cites one case, *Frankenmuth Mutual Ins. Co. v. Williams*, 645 N.E.2d 605 (Ind. 1995), in support of its assertion that Westfield received sufficient notice to trigger a duty to defend. *Frankenmuth Mutual* is a collateral estoppel case, addressing the question "How much notice must an insurer receive concerning litigation against one of its policyholders to bind it to the resolution of litigation in which it did not participate?" *Id*. at 606. Because the insurer there had received a subpoena duces tecum and a non-party request for production of documents in the lawsuit against its insured, and had investigated the claims enough to issue a letter to its insureds about the matter, the insurer was "bound at least to the matters necessarily determined in the lawsuit." *Id*. at 607. This collateral estoppel holding does not appear to support the Class's assertion of a broader equitable estoppel against all policy defenses based on a breach of the duty to defend. And on the present question of notice, I believe that the unique facts of the separate federal and state lawsuits here are distinguishable from those in *Frankenmuth*.

9

The Class has not adduced evidence of how and when Westfield first learned of this federal action, and whether and when its insureds, the VIM defendants, ever tendered this action to Westfield for a defense. And the Class's argument fails to address the legal significance, or insignificance, of those facts (whatever they are). "In Indiana, the notice requirement of an insurance policy is 'material, and of the essence of the contract.'" *Wolf Lake Terminals, Inc. v. Mutual Marine Ins. Co.*, 433 F.Supp.2d 933, 950 (N.D.Ind. 2005), quoting *Miller v. Dilts*, 463 N.E.2d 257, 265 (Ind. 1984). "Without notice, the insurance company has no liability to the insured." *Id.*, citing *PSI Energy, Inc. v. The Home Insurance Company*, 801 N.E.2d 705, 715-16 (Ind.Ct.App. 2004). The Class's blithe reliance on *Frankenmuth Mutual* is not persuasive on the critical question whether Westfield "had sufficient constructive notice from other sources to trigger its duty to defend notwithstanding a lack of notice directly from" the insureds. *Dreaded, Inc.*, 904 N.E.2d at 1273.

Because it appears likely that Westfield learned of this case against its insureds after final judgment in the district court and while the matter was pending on appeal, the impact (if any) of that timing on the duty to defend also needs to be considered. What difference does it make if Westfield believed the federal action was all over at the time Westfield first learned of it? What is the impact on Westfield's duties that this lawsuit was revived on appeal, after Westfield previously had no knowledge of the case or role in its defense in the district court? Does it make any difference if the insureds never advised Westfield of the case or invoked coverage or a defense? Late notice raises

questions of prejudice to the insurer, on which the Indiana Supreme Court acknowledges Indiana law has been uncertain – "Indiana case law is inconclusive regarding the necessity and function of prejudice in evaluating an insurer's alleged failure to perform when its insured fails to comply with a policy notice requirement." *Id*. at 1271. The record before me does not address these matters.

One final issue warrants comment. Obviously, equitable estoppel is a doctrine of equity. Estoppel "springs from equitable principles, and is designed to aid the law in the administration of justice where without its aid injustice might result." *State v. Mutual Life Ins. Co. of New York*, 93 N.E. 213, 222 (1910). If it would not be equitable in the circumstances, estoppel should not be applied. Westfield contends that, in view of the manner in which it behaved as the VIM Defendants' insurer, the interests of equity are not well served by applying estoppel here in the manner advocated by the Class.

Westfield argues that, upon first learning of the environmental claims against its insureds by the Class, Westfield acted as a responsible insurer in two ways. First, it assumed a defense of the VIM Defendants in the Elkhart action, subject to a reservation of rights. Second, it filed the federal action before Judge Van Bokkelen to obtain a declaration as to its duties to defend and indemnify the VIM Defendants. There Westfield obtained a default judgment against each of the VIM Defendants, as well as an "Agreed Judgment" with the Class, all declaring that Westfield had no duty to defend or indemnify the VIM Defendants in the Elkhart lawsuit. [DE 259-6; DE 259-4 at 9; DE 259-5 at 9.]

11

Because Westfield did not abandon the VIM Defendants or otherwise act irresponsibly as their insurer, Westfield suggests it would be inequitable to estop them from their policy defenses merely due to their mistaken belief that the judgment they obtained from Judge Van Bokkelen was applicable to both the federal and state lawsuits by the Class. This argument has some appeal, particularly as the Class has not offered any evidence that the VIM Defendants ever requested a defense or indemnity from Westfield with respect to this federal action, either before or after the appeal, and may have shared Westfield's understanding of the effect of Judge Van Bokkelen's judgments. The Class suggests this type of error on Westfield's part does not militate against equitable estoppel any more than an insurer's erroneous view of its coverage would. I find these circumstances distinguishable. The latter is the mistake that causes a breach of the duty to defend in the first place. Westfield claims an erroneous belief about the results of the steps it took to assure it did *not* breach the duty to defend. I think the latter is appropriately taken into account in determining the equitable impact of a breach of the duty, if it is ultimately found.

In the absence of a fuller factual record and more in-depth analysis of the issues I've raised, I am not persuaded that the Class has demonstrated an entitlement to judgment as a matter of law based on their contentions about Westfield's breach of the duty to defend. Furthermore, a trial court may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Id*. at 255. *See also Firman v. Life Ins. Co. of North America*, 684 F.3d 533, 538 (5th

Cir. 2012). "[E]ven where the summary-judgment standard appears to have been met, the court should have the freedom to allow the case to continue when it has any doubt as to the wisdom of terminating the action prior to a full trial." 10A Wright, Miller and Kane, *Federal Practice and Procedure*, §2728 (2016). "Although complex or novel issues of law do not preclude summary judgment, their presence in the action may suggest that a fuller development of the facts would be helpful to their resolution. In those circumstances, the court may deny summary judgment." *Id*. at §2725.3.

I have identified a number of factual and legal questions that cannot be resolved on the present record. Even if these matters had been fully addressed by the present motion, I am uncomfortable with the resolution of this proceeding supplemental on less than a full exploration of all the facts and legal arguments relative to Westfield's liability under the policies. Both sides have now attempted a short-cut win by summary judgment. Neither has succeeded. This litigation has already dragged on for too long. Repeated failures to dispose of the case by dispositive motion suggest that the parties should proceed quickly through discovery and prepare to submit their dispute for a decision on the basis of a full factual record and argument on all legal issues.

On that subject, in passing Westfield bemoans its loss of a right to jury trial in proceedings supplemental as a reason not to permit the Class to make its argument about breach of a duty to defend. [DE 275 at 18; DE 283 at 5.] Citing *Rose v. Mercantile National Bank of Hammond*, 868 N.E.2d 772, 776 (Ind. 2007), the Class correctly points out in response that "[w]hile juries are disfavored in proceedings supplemental…, where the

13

pleadings form issues of fact that a jury could reasonably decide, the parties may demand a jury trial," but that Westfield failed to demand a jury in its answer or timely within 14 days thereafter as required by Fed.R.Civ.P. 38(b). [DE 284 at 6.] So it appears that the ultimate decision in these proceedings supplemental will be made by the court whether or not it is by motion or trial.

## Conclusion

For the reasons explained here, I am not persuaded that the Class has conclusively demonstrated that Westfield breached its duty to defend the VIM Defendants in this case, or that as a result, Westfield is estopped from invoking policy defenses to coverage for the liability that is the subject of these proceedings supplemental.

**ACCORDINGLY:**

Plaintiffs' Motion for Partial Summary Judgment [DE 273] is DENIED.

**SO ORDERED**.

ENTERED: April 26, 2018

 /s/ Philip P. Simon  
**PHILIP P. SIMON, JUDGE**